## MISSOURI, K. & T. RY. CO. v. ELLIS.

No. 6593.    Opinion Filed March 14, 1916.

(156 Pac. 226.)

JUDGMENT—New Trial—Ground—Negligence of Corporation's Agent —Vacation of Judgment. The negligence of an agent of a defendant corporation, in misplacing a copy of the summons served upon him, and in not notifying the corporation of the service of such summons, is not "accident or surprise, which ordinary prudence could not have guarded against," within the meaning of section 5033, Rev. Laws 1910, nor is it "unavoidable casualty or misfortune, preventing the party from prosecuting or defending," within the meaning of section 5267, subd. 7, Rev. Laws 1910, so as to make it an abuse of discretion for the trial court to refuse to grant a motion to vacate a default judgment and for a new trial by reason thereof.

(Syllabus by the Court.)

*Error from District Court, Pawnee County;*
*L. M. Poe, Judge.*

Action by Robert Ellis against the Missouri, Kansas & Texas Railway Company. From the order of the court refusing to set aside default judgment in favor of plaintiff

and to grant a new trial, defendant brings error. Affirmed.

*Clifford L. Jackson, W. R. Allen,* and *M. D. Green,* for plaintiff in error.

*Hayes & Cleeton,* for defendant in error.

SHARP, J.   October 31, 1913, plaintiff instituted this action against defendant to recover an alleged balance due on a contract for the construction of a depot by the former for the latter at Cleveland, Okla.   Service of summons was had on defendant November 5, 1913, by delivering a copy thereof to V. A. Eikenbury, acting agent of the company at Hallett, Okla.   Answer day in the summons was fixed as November 28, 1913.   No answer or other pleading to the petition having been filed, on January 6, 1914, default judgment in favor of plaintiff was taken.   On the same day defendant was apprised of the default judgment taken against it, though it does not appear in what manner it received the information.   On January 9th thereafter defendant filed its motion to vacate the judgment and for a new trial, and subsequently filed two amended motions to vacate.   To these motions to vacate and grant a new trial plaintiff filed an answer, and on February 25th a hearing was had thereon.   From the evidence introduced at the hearing, it would seem that at the time Eikenbury was served with the summons in this case he inclosed it in an envelope and addressed the envelope to the superintendent of the railroad company at Oklahoma City, but that he neglected to mail it; that the summons became misplaced in the office of the station at Hallett, and was not seen again until January 28, 1914, when it was found on the telegraph table in the office at

Hallett by the regular agent at that place, N. A. Wooley, although he had resumed the duties of station agent November 19, 1913. The court overruled defendant's motion to vacate the judgment and for a new trial February 26, 1914, from which order defendant brings error.

Counsel for plaintiff in error admit the negligence of the agent at Hallett, as will be seen from the following statement in their brief:

"From the evidence and the record in this case it appears that the summons was issued on October 31. 1913, and served by Deputy Sheriff Lee Watts on V. A. Eikenbury, then in charge of the railway company's station at Hallett, Okla., on November 5, 1913. Eikenbury states that on the day the summons was delivered to him he placed same in an envelope and addressed the envelope to S. H. Charles, superintendent of the railway company, at Oklahoma City, and placed it with other mail to go on the train for Oklahoma City. Further information he is unable to give. The summons not having reached Superintendent Charles, and the legal department of the railway company having had no advice of the commencement of the suit or the service of the summons, no answer or other pleading was filed on behalf of the railway company, and on January 6, 1914, the plaintiff, by his attorneys, procured judgment by default against the railway company. On January 28, 1914, a copy of the summons, and apparently the copy which was served on Eikenbury, was found on the telegraph table in the agent's office at the station of the railway company at Hallett. Neither of the two employees then on duty there knew how it reached that place. There is some evidence that the agent who found the summons on January 28, 1914, stated to other parties that he found it among some papers, or words to that effect, but the agent himself testified that he found it on the telegraph table. While the facts when taken most strongly against the railway company may be said to show negligence on the part of its agent in failing to properly handle the

summons which was served on him, yet under all the circumstances it is respectfully submitted the railway company should not be required to suffer on that account and be compelled to pay out a large sum of money without first having the question of its liability tried out before a jury."

In the affidavit of Eikenbury, the acting agent, we fail to find where he says that he mailed the summons served upon him, though he states he addressed the envelope containing it. A portion of his second affidavit in this regard reads:

"Affiant further states that in his former affidavit, in which he said 'that I mailed said summons' to Superintendent Charles, and that in his letter of January 8, 1914, to Clifford L. Jackson, general attorney for said railway company, wherein he said that he notified Superintendent Charles' office 'by sending summons as served on me as agent,' that affiant did not mean to be understood as having any personal recollection of having actually mailed said summons on the train or in the post office, or having actually sent said summons to Superintendent Charles, but that he had placed said summons in an envelope as above stated, and had addressed the envlope to Superintendent Charles. Affiant states that he has examined the copy of said summons which has been found in the station at Hallett, and that it appears to be like the copy which was given him by the deputy sheriff."

By section 5033, Rev. Laws 1910, it is provided that a former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved for any of the several grounds therein set forth, among which is the following: "Third. Accident or surprise, which ordinary prudence could not have guarded against." And by section 5267, subd. 7, a district court may vacate its own judgments or orders "for unavoidable casualty or misfortune, preventing the party

from prosecuting or defending." Whether the proceedings were brought under section 5033 or 5267, subd. 7, is immaterial; for it would lie under neither upon the showing made. In the petitions of defendant to vacate the judgment and for a new trial we find that the relief asked is based on "irregularity on the part of the prevailing party" and "in the obtaining of said judgment," "accident or surprise which ordinary prudence could not have guarded against," and "unavoidable casualty and misfortune." That there was any irregularity in the proceedings below in obtaining the judgment has apparently been abandoned on appeal, as it is not referred to in the brief of counsel for plaintiff in error. As regards "accident or surprise," no doubt, the defendant was surprised upon learning that default judgment had been taken against it; but the surprise, if it resulted from learning of the judgment, was due to the negligence of its agent in not notifying the proper officers of the company of the service of the summons. Such negligence is imputed to the company, and the surprise, if any, could have been guarded against, in the language of the statute, by "ordinary prudence." The courts of this state seem not to have passed upon this particular question, though on several occasions it has been held that negligence of an attorney is imputable to his client, and that the latter cannot, as a matter of right, be relieved from a judgment against him in consequence of the neglect or inattention of the former. *Wynn v. Frost,* 6 Okla. 89, 50 Pac. 184; *Marshall v. Marshall,* 7 Okla. 240, 54 Pac. 461; *Bigsby et al. v. Epstein et al.,* 39 Okla. 466, 135 Pac. 934.

Can the negligence of the agent in not notifying the company of the service of the summons be said to be "unavoidable casualty or misfortune"? Did the fact that

he may have misplaced the copy of summons relieve him of his duty to notify his superiors, by either wire or letter? The answer must be in the negative. In *Reese Lumber Co. v. Licking Coal & Lumber Company,* 156 Ky. 723, 161 S. W. 1124, where the identical question was before the court, it was held that the negligence of an agent is imputable to the principal, and consequently that the failure of an agent appointed by a foreign corporation to receive service of process to notify the corporation of the service, though preventing the corporation from making a defense to the action, was not an unavoidable casualty or misfortune within the provisions of the statute providing for vacation of judgments. In *Bradshaw v. Des Moines Insurance Co.,* 154 Iowa, 101, 134 N. W. 628, the statute provided that a default judgment might be set aside where a reasonable excuse was shown for having made the default. In that case service of summons was had upon the agent of the defendant company as provided by statute, but the agent failed to notify the company of such service. It was held that such showing did not constitute excusable neglect, but was, instead, inexcusable neglect. It was also contended that the negligence of the agent was "unavoidable casualty or misfortune," but the court refused to so consider it. In *Bond v. Karma-Ajax Consol. Mining Co.,* 15 Cal. App. 469, 115 Pac. 254, service of process was had upon the president of the defendant corporation. The president, believing that the claims sued on were justly due, did not notify the board of directors of the company of the pendency of the suit. It was held that such action on the part of the president of the company did not show inadvertence or excusable neglect, and that the trial court did not abuse its discretion in

refusing to set aside a default judgment obtained by reason thereof. See, also, Freeman on Judgments (4th Ed.) sec. 115a; Black on Judgments, sec. 337; *Fred Andres & Co. v. Schlueter,* 140 Iowa, 389, 118 N. W. 429.

However, counsel insist that they were entitled to a new trial under the decisions of this court in *Chicago, R. I. & P. Ry. Co. v. Eastham et al.,* 26 Okla. 605, 110 Pac. 887, 30. L. R. A. (N. S.) 740; *Chicago, R. I. & P. Ry. Co. v. Reese,* 26 Okla. 613, 110 Pac. 1071; *McLaughlin et al. v. Nettleton,* 25 Okla. 319, 105 Pac. 662. In the Eastham Case the defendant mailed certain pleadings to the clerk of the court in which the action was pending in time for them to have reached said court on the answer day. By reason of miscarriage of the mail the same was delayed, and arrived at destination a day late, and subsequent to the taking of a default judgment in favor of plaintiff. On appeal this court held that miscarriage of the mail, not being the fault of the defendant, was an accident which should not foreclose the right of the defendant to its day in court, and reversed the judgment of the trial court refusing to grant defendant a new trial. The opinion in the Reese Case was based on the same state of facts as in the Eastham decision. In *McLaughlin v. Nettleton,* counsel for defendant, who lived at Wichita, Kan., had requested the clerk of the district court at Hobart, Okla., to wire him on what day the case was set for trial. The clerk delivered a telegram to the telegraph company at Hobart for transmission, reading, "Your case is set for the 21st," but by mistake the telegram was sent and received as, "Your case is set for the first." This mistake resulted in defendant not being represented at the trial and the taking of a default judgment in favor of plaintiff. The opinion holds that

such facts brought the case within the clause of section 4760, Wilson's Rev. & Ann. St. 1903 (section 5267, subd. 7, Rev. Laws 1910), providing that the district court shall have power to vacate or modify its own judgments or orders for "unavoidable casualty or misfortune, preventing a party from prosecuting or defending."

In all of these cases the delay was the result, not of mistake or negligence of one of the parties to the action, as in the present case, but of the fault of an established and recognized channel for the transmission of mail or telegrams, and for that reason they are not in point. The case of *Williams v. Richmond & Danville R. Co.*, 110 N. C. 466, 15 S. E. 97, was based upon a statute of that state fundamentally different from the statute of this state. The pertinent part of section 274, Code Civ. Proc. North Carolina 1883, reads:

"The judge * * * may also, in his discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. * * * "

In that case it was only held that the trial court did not abuse its discretion in holding that the facts there shown constituted "excusable neglect," which ground for a new trial is not contained in our statute. *Wynn v. Frost, supra.*

A large part of the brief of plaintiff in error is taken up in urging that it had a meritorious defense to plaintiff's cause of action. While it is essential that a meritorious defense should be set forth in a petition to vacate a judgment and for a new trial, it is also essential that the petitioner bring itself within some of the grounds

named by the statute for the granting of such relief. An application to vacate or modify a judgment is addressed to the sound discretion of the trial court, and will not be disturbed on appeal unless it clearly appears that the court has abused its discretion. *Poff v. Lockridge,* 22 Okla. 462, 98 Pac. 427; *Atchison, T. & S. F. Ry. Co. v. Schultz,* 24 Okla. 365, 103 Pac. 756; *Chicago, R. I. & P. Ry. Co. v. Maynard,* 31 Okla. 685, 122 Pac. 149; *Philip Carey Co. v. Vickers,* 38 Okla. 643, 134 Pac. 851.

·No state ·of facts having been shown which would indicate an abuse of discretion on the part of the trial court in overruling the motion to vacate the judgment and for a new trial, the judgment is affirmed.

All the Justices concur.