## Poff v. Lockridge.

### No. 881, Ind. T.    Opinion Filed November 11, 1908.

### (98 Pac. 427.)

1.  **JURY—Right to Jury Trial—Vacation of Judgment.** The issues arising upon the pleadings as to the sufficiency of the grounds upon which a judgment is sought to be vacated or modified, together with the validity of the defense sought to be interposed to the action, are triable to the court without the intervention of a jury, within the meaning of Mansf. Dig. Ark. sec. 3913 (Ind. T. Ann. St. 1899, sec. 2593.)

2.  **APPEAL AND ERROR—Discretion of Court—Vacating Judgment.** An application to vacate or modify a judgment is addressed to the sound legal discretion of the court, and will not be disturbed on appeal, unless it clearly appears that the court has abused its discretion.

(Syllabus by the Court.)

*Error to the United States Court for the Southern District of the Indian Territory at Purcell; J. T. Dickerson, Judge.*

Action by Ben Lockridge against Maggie May Poff. Judgment for plaintiff, and defendant brings error. Affirmed.

On September 25, 1905, Ben Lockridge, defendant in error, plaintiff below, brought suit in the United States Court for the Indian Territory, Southern District, at Purcell against Maggie May Poff, plaintiff in error, defendant below, to set aside a judgment rendered by the court at a previous term against him in her favor for possession of a certain tract of land, and for mesne profits, on the ground that he had a good defense to that action, and that casualty and misfortune prevented him from appearing and defending. After motion to strike and demurrer to the complaint were filed and overruled, defendant answered April 5, 1906, and, the cause coming on for trial, demanded a jury "as in an action by proceeding at law," which was by the court denied, the issues tried to the court, and judgment rendered in favor of plaintiff,

the court finding that he was unavoidably prevented from appearing and defending the action complained of, without fault or negligence on his part; that he had a good defense to the same, and that the judgment be set aside, and plaintiff be restored to his original rights, with the right to defend the same, to all of which defendant excepted, and, after motion for a new trial was filed and overruled, took a writ of error to the United States Court of Appeals in the Indian Territory, and the case is now before us for review.

*J. W. Hocker,* for plaintiff in error.

*F. E. Riddle,* for defendant in error.

TURNER, J. (after stating the facts as above). This is a suit to set aside a judgment under Mansf. Dig. Ark. § 3909 (Ind. T. Ann. St. 1899, § 2589). It is contended by plaintiff in error, hereafter called defendant, that there is a misjoinder of causes of action, in that defendant in error, hereafter called plaintiff, in his petition has also joined an action for the wrongful taking of personal property. In this we cannot agree. The petition, in stating facts sufficient to entitle plaintiff to a temporary injunction pending the suit (which was not granted so far as the record shows), sets forth, in effect, that defendant had not only already sued out one execution on the judgment wrongfully obtained, which had been levied on all the property plaintiff then had, and the same sold, leaving him destitute, but was threatening to levy a second execution to enforce the collection of said judgment on property produced by him since that time. No judgment is asked in damages against any one for the value of this property, no one but Maggie May Poff made a party defendant, and the only relief prayed or granted by the court was the setting aside of the judgment.

It is next contended that the petition fails to state facts sufficient to constitute a cause of action—that is, fails to state facts sufficient to invoke the discretion of the court to set aside the judgment—in that the petition discloses that the judgment was taken

as a result of the negligence of plaintiff's attorney. It is said in 23 Cyc. 939, 940.

"It is a general rule that the negligence of an attorney is imputable to his client, and that the latter cannot be relieved from a judgment against him in consequence of the neglect or inattention of the former"—and authorities cited.

And this seems to be the rule as laid down in *Welch v. Challen,* 31 Kan. 696, 3 Pac. 314, and followed by the Supreme Court of the Territory of Oklahoma in *Marshall v. Marshall,* 7 Okla. 240, 54 Pac. 461, and *Wynn v. Frost,* 6 Okla. 89, 50 Pac. 184. But does the petition so disclose? We think not. It, in effect, upon this point states that the suit in which the judgment complained of was taken was brought against him by defendant on March 1, 1902; that he employed an attorney, who filed answer in due time, and the cause continued until the October term; that a few days prior thereto plaintiff's son was taken sick, and grew worse until October 28th, when he died, and that, on account of his sickness and death, he was prevented from attending court; that a few days prior to said term, he wrote and mailed his said attorney a letter addressed to him at his place of residence at Pauls Valley, where said suit was pending, notifying him of the facts, as stated, and fully relied on him to postpone the cause; "that he never at any time had any reason his said attorney did not look after same, and had no notice that any action was taken in said cause until long after the expiration of said term of court;" that immediately thereafter he saw his attorney, and informed him of the circumstances, whereupon he replied that plaintiff was always sick, and advised him to get another lawyer. No negligence on the part of the attorney is charged, and we can infer none. If it can be contended that the presumption obtained that the attorney received the letter through due course of the mails, another presumption would obtain that he did his duty when he got it.

It is next contended that the court erred in overruling the demurrer in that the petition on its face discloses laches. Notwithstanding the fact that no statute was in force in that jurisdiction

limiting the time within which this character of action was requir-
ed to be brought, it is nevertheless true that a party seeking to in-
voke the remedy must do so within a reasonable time, and we see
no reason why a demurrer should not be sustained to a petition
disclosing on its face that he had not done so. 12 En. Plea. &
Prac. 832, 17 Am. & Eng. Enc. of Law (2d Ed.) 841, states the
rule thus:

"In the absence of statute it is very generally considered that
a party seeking to have a judgment opened or vacated must pro-
ceed with proper diligence, and take the proper steps therefor with-
in a reasonable time, and that his right to relief may be lost by
laches. It is of course impossible to lay down any fixed rule as
to what will constitute such laches as to deprive a party of any
right to relief against a judgment, but such case must be governed
by its own circumstances."

But does the face of the petition disclose laches? We think
not. It alleges that the judgment recovered was not only for the
land upon which he lived and had just raised a crop, but was for
$450 mesne profits and costs; that before he knew of its existence,
a writ of restitution issued dispossessing him, and was levied on
his entire crop, which was sold, leaving him destitute. It then
recites at length his persistent efforts, without means, to employ
counsel to bring suit to set aside the judgment, and give him an
opportunity to plead to the merits, which he finally succeeded in
doing some three years thereafter, in the face of another threat-
ened execution to enforce the same judgment, "without his being
paid a fee in advance, and that said attorney has agreed to wait
on him until he could make something with which to pay." Un-
der the circumstances the petition on its face disclosed no laches,
and for that and the reason stated the court did not err in over-
ruling the demurrer thereto.

After the demurrer was filed and overruled, defendant an-
swered, and went to trial, first demanding a jury to try the cause,
which was denied, and this constitutes the next assignment of er-

ror. Defendant predicates this right on Mansf. Dig. Ark. § 3909 (Ind. T. Ann. St. 1899, § 2589), which is as follows:

"The court in which a judgment or final order has been rendered or made shall have power, after the expiration of the term, to vacate or modify such judgment or order. * * * Seventh. For unavoidable casualty or misfortune preventing the party from appearing or defending."

And on Mansf. Dig. Ark. § 3911 (Ind. T. Ann. St. 1899, § 2591):

"The proceedings to vacate or modify the judgment or order, on the grounds mentioned in the fourth, fifth, sixth, seventh and eighth subdivisions of section 3909 shall be by complaint, verified by affidavit, setting forth the judgment or order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On the complaint, a summons shall issue and be served, and other proceedings had as in an action by proceedings at law."

And especially relies on the latter part of this section. But these sections must be construed in connection with Mansf. Dig. Ark. § 3913 (Ind. T. Ann. St. 1899, § 2593), which reads:

"The court may first try and decide upon the grounds to vacate or modify a judgment or order before trying or deciding upon the validity of the defense or cause of action."

While this question seems never to have been passed on in the construction of these statutes by the Supreme Court of Arkansas, we observe the practice has always been in that jurisdiction to try these questions to the court. This was the practice observed in *Johnson v. Campbell,* 32 Ark. 316, 12 S. W. 578, *State National Bank v. Neel,* 53 Ark. 110, 13 S. W.· 700, 22 Am. St. Rep. 185, *Chambliss v. Reppy,* 54 Ark. 539, 16 S. W. 571, and *Leaming v. McMillan,* 59 Ark. 162, 26 S. W. 820, 43 Am. St. Rep. 26. The first part of section 3909, *supra,* is in effect the same as section 4760, and the seventh subdivision, *supra,* is identical with subdivision 7 of section 4760, Wilson's Rev. & Ann. St. Okla., 1903. Section 3911, *supra,* and section 4762, Wilson's Rev. & Ann. St. Okla., 1903, are in effect the same; and section 3913,

*supra,* and section 4763, Wilson's Rev. & Ann. St. Okla., 1903, are identical. Thus we see that the laws of Arkansas, in force in the Indian Territory at the time this case. was tried, were practically the same as those now in force in Oklahoma by virtue of the sections of Wilson's Rev. & Ann. St. Okla., 1903, *supra.* Neither has this question ever, it seems, been passed on in this jurisdiction, but in Kansas, whence these sections were adopted, being, respectively, sections 568, 570, and 571 of the Kansas Code (Gen. St. 1901, §§ 5054, 5056, 5057), the practice of trying issues of fact to the court in cases of this kind seems to have been adopted by the trial court, and spoken of approvingly by the Supreme Court. *List v. Jockheck,* 45 Kan. 349, 27 Pac. 184. Section 3913 would clearly seem to contemplate a trial to the court, and that it should first try and decide upon the grounds to vacate or modify, and then try and decide upon the validity of the defense offered to the action in which the judgment complained of was taken, before opening the judgment and permitting petitioner to plead, and this undoubtedly is the proper practice.

15 En. of Plea. & Pr. 287, says:

"Upon an application to open or vacate a judgment, the court must first decide whether a sufficient ground for granting the application exists, and this question must be tried and decided by the court, and not by a jury"—citing authorities.

In *Watson v. Paine,* 25 Ohio St. 340, the court said:

"When a proceeding by petition or by motion to vacate or modify a judgment is instituted, under Code, §§ 535, 536, the first thing to be done by the court is to try and decide whether or not a 'ground,' to vacate or modify exists. Section 537. 'The grounds' referred to in this section are those enumerated in the nine subdivisions of section 534. In some cases the question thus to be tried and decided can be determined by inspection of the, record; in others the testimony of witnesses must be heard. But in all cases this question must be tried and decided by the judge or judges."

In *Carpenter v. Brown,* 50 Iowa, 451, the precise question

arose under statutes similar to those under construction, and the court said:

"The court refused, upon the demand of the plaintiff, to submit the issues arising on the petition for a new trial to a jury. This action of the court is assigned as error. The petition for new trial was filed under section 3155 of the Code (Code 1873), which provides: 'Where the grounds for a new trial could not .with reasonable diligence have been discovered before, but are discovered after the term at which the verdict, report of referee or decision was rendered or made, the application may be made by petition, filed as in other cases, not later than the second term after the discovery, on which notice shall be served and returned, and the defendant held to appear as in an original action. The facts stated in the petition shall be considered as denied without answer. The case shall be tried as other cases. * * *' Code 1873, § 3160, provides: 'The court may first try and decide upon the grounds to vacate or modify a judgment or order before trying or deciding upon the validity of the defense or cause of action. * * *' The plaintiff claims the right to a jury trial under the provision of section 3155, that 'the case shall be tried as other cases by ordinary proceedings.' This provision, however, must be construed in connection with other portions of the chapter. Section 3160 provides that 'the court may first try and decide upon the grounds to vacate or modify a judgment or order.' Here is a very strong implication that the trial is to be by the court. If the trial may be by jury, then, under section 3160, two distinct jury trials may be had; one to try and decide upon the grounds to vacate or modify the judgment, and one to try and decide upon the validity of the defense or cause of action. An innovation so startling as the submission to a jury of the question whether a party shall be granted a new trial should not be engrafted upon the law, unless it clearly appears that the Legislature intended such change. Taking together all of the provisions of the chapter in which the section under consideration occurs, we do not think such change was intended."

In *Niagara Insurance Company v. Rodecker & Pearson*, 47 Iowa, 162, the lower court tried the issues, and the Supreme Court on appeal indicated the proper practice thus:

"The court below seems to have proceeded, first, to try and decide upon the grounds to vacate the judgment before trying or

deciding upon the validity of the defense. This may be done under section 5160 of the Code. Having decided that the grounds to vacate were not sufficient, it was unnecessary to go into the inquiry as to the validity of the defense. If it had been found that the company was not negligent in law or fact in not sooner appearing to the action, then, before the judgment could be vacated, the validity of the defense must have been tried and determined. Not only the sufficiency of the answer upon its face, but the truth of its averments, must be determined. We think this is the proper construction of chapter 1, tit. 19, of the Code of 1873."

We are therefore of the opinion that the trial court did not err in denying to defendant the right of trial by jury of the issues of fact arising in the case.

It is next contended, in effect, that the judgment is not supported by the evidence, and is contrary to law. In order to entitle plaintiff to vacate the judgment complained of, the burden of proof was upon him to establish unavoidable casualty or misfortune which prevented him from appearing or defending, and that he had a good defense to the action. 17 A. & E. Enc. of L. (2d. Ed.) 843. After hearing the testimony of all the witnesses, the court found that the "plaintiff herein, Ben Lockridge, had a legal defense to the cause of action in case No. 614 styled 'Maggie May Poff, Plaintiff, v. Ben Lockridge, Defendant,' that said defendant was unavoidably prevented from appearing and defending said cause of action, without any fault or neglect on his part, and that said judgment rendered against him in said action for the possession of the land described in said complaint, and for damages recovered thereon, to the amount of $......................., should be set aside and held for naught," and it was so ordered, and said Lockridge given leave to plead. This, in effect, was a general finding in favor of the plaintiff, and carries with it a finding of every special thing necessary to be found to sustain the general finding. *Hockaday v. Jones,* 8 Okla. 156, 56 Pac. 1054; *Tootle v. Brown,* 4 Okla. 612, 46 Pac. 550; *United States National Bank v. National Bank of Guthrie,* 6 Okla. 163, 51 Pac. 119; *Penny v. Fell-*

*ner,* 6 Okla. 386, 50 Pac. 123; *Gillette v. Murphy,* 7 Okla. 91, 54 Pac. 413; *City of Guthrie v. Shaffer,* 7 Okla. 459, 54 Pac. 698. But it is contended that the undisputed testimony fails to disclose that plaintiff was unavoidably prevented from appearing and defending the action of which he complains, and, in effect, the court abused its discretion in setting the judgment aside for that reason.

An application for the opening or vacation of a judgment is addressed to the sound legal discretion of the court, and while his disposition of the application may be reviewed on appeal, it will not be reversed, unless it clearly appears that this discretion has been abused. 17 Am. & Eng. Enc. of Law, 844, and cases cited.

In *Williams v. Railroad,* 110 N. C. 466, 15 S. E. 97, the court said:

"This court has repeatedly held that, where a judge was governed, in passing upon a matter entirely within his discretion, by an erroneous view of the law the party injured by the mistake might, on appeal, have his judgment set aside. The appellate court must determine, upon an admitted state of facts, whether there was excusable neglect on the part of the litigant in the conduct of an action, just as it must decide whether, according to an undisputed finding of facts, a party has shown such diligence as to save him from liability in an action brought to recover for negligence."

In *Bailey v. Taaffe,* 29 Cal. 423, the court said:

"The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion to be exercised *ex gratia,* but a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve, and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. If it be doubtful whether the excuse offered is sufficient or not, or whether the defense set up is with or without merit *in foro legis,* when examined under those rules of law by which judges are guided to a conclusion, the judgment of the court below will not be disturbed."

The facts are undisputed, and disclose that at the time of

answer filed an attorney was employed, and his fee fixed and se-sured by written obligation, dated March 18, 1902, payable October 1st following, signed by plaintiff and Weeden, his father-in-law, under whom, as tenant, he claimed the right to hold the premises sued for. Shortly before the obligation fell due, the attorney wrote Lockridge, who lived 16 miles in the country and six miles from his postoffice, calling his attention to its approaching maturity, and asking prompt payment when due. This letter was never received. Some time prior to the trial term in October, owing to the fact that two of Lockridge's children were taken violently ill, one with typhoid fever, and one with some other disease, of which it died a few days after the judgment complained of was rendered, Lockridge, about a week prior to the term, wrote a letter to his attorney, stating that owing to sickness in his family, he would be wholly unable to attend court, and asking that the case be postponed. This letter was given Weeden to mail, which was promptly done, he first inclosing therein a note written by himself, informing the attorney that he also had two sick children at his house, and that he too was unable to attend court on that account, and joined in the request of Lockridge that the case be continued. This letter was never received by the attorney, who as the trial approached, thinking he was not going to be paid, again wrote Lockridge, in ample time, as he thought, to employ other counsel, of his withdrawal from the case. This letter was never received by Lockridge. The case coming on for trial, and Lockridge failing to appear in person or by counsel, the case proceeded to trial, and resulted in the judgment herein sought to be set aside. Thus it will be seen that the unavoidable misfortune preventing Lockridge from appearing in person and defending was sickness in his family, and the unavoidable misfortune preventing him from appearing by attorney was miscarriage of the mail. A combination of the two brought about the judgment. While sickness in one's family, standing alone, might not be sufficient to excuse a party for failure to attend trial, yet we are constrained to

hold that such sickness preventing his attendance, coupled with the use of reasonable diligence on his part to present such excuse to the court, and a miscarriage of the mail conveying the excuse and preventing its communication to the court, constitute such unavoidable misfortune, within the terms of the statute, as would justify the court in the exercise of its discretion in setting aside the judgment.

This was not directly passed upon, but strongly intimated, in *Glover v. Dimmock, Trustee, et al.,* 119 Ga. 696, 46 S. E. 824. In that case the plaintiff alleged that at the time of the rendition of the judgment against her the petitioner was detained at home on account of the serious illness of her mother, who shortly thereafter died; that she had employed two attorneys to represent her, and that she afterwards learned that, prior to the trial of the case, both of her attorneys caused their names to be erased from the docket, stating that they no longer represented her; that she had no notice that her attorneys or either of them intended to abandon her cause, and did not learn of it until long after the trial at which judgment was rendered. The trial court sustained a demurrer to the petition, which was affirmed on appeal, but in passing the Supreme Court said: "It is not made to appear that plaintiff made any effort to notify any one connected with the case of her inability to be present at the trial, or that she took any steps to have the case postponed or continued"—thereby intimating very strongly that, had such been the case, the petition might upon that point have presented facts sufficient to invoke the discretion of the court.

A loss in the mails has several times been held to be an unavoidable misfortune such as would justify the court in setting aside a judgment. In *Boyd v. Williams,* 70 N. J. Law, 185, 56 Atl. 135, the plea of the defendant was prepared, and duly mailed to the clerk of the Supreme Court within the time limited by law, and was without doubt lost in the mails. Plaintiff took judgment by default, and, it appearing that the defense should have been

passed on by a jury, the judgment was opened, with permission to him to plead. In *Hill et al. v. Crump*, 24 Ind. 291, after the judgment was rendered against him, defendant appeared, and moved to set the same aside, and filed affidavits in support of his motion, which disclosed that, after he had employed counsel to defend, and had caused subpœna to be issued for his witnesses, he had been prevented from attending court by the dangerous illness of his wife, and that his attorney, being provost marshal of the district, had been so engaged in enforcing the draft that he had been unable to attend the court, and had neglected to speak to any other attorney to represent him. The affidavits also disclosed a meritorious defense, but the lower court held the same to be insufficient to set aside the judgment, and refused so to do. On appeal, the Supreme Court held the same to be an abuse of discretion on the part of the lower court, and reversed and remanded the case, with directions that the default and judgment be set aside. In this last case it will be observed there was no notice conveyed, or attempted to be conveyed, from the defendant to his attorney of his inability to attend the trial on the ground of sickness in his family, as in the case under consideration; that there was no excuse for failure to attend to the case on the part of the attorney save other duties, but nevertheless the Supreme Court of Indiana was of the opinion that the lower court abused its discretion in failing to set aside the judgment, notwithstanding the well-established rule that, to justify the interference of the Supreme Court with a ruling of the lower court, in cases of this kind, a much stronger showing of abuse of discretion in the trial court must be made when the judgment has been set aside than where it has been denied. *Barto v. Sioux City Elec. Co.*, 119 Iowa, 179, 93 N. W. 268.

In *Utah Commercial Bank v. Trumbo*, 17 Utah, 198, 53 Pac. 1033, plaintiff failed to receive the following letter, among others, from his client: "We did not hear from you in reference to your case, and, unless we do by return mail, we shall withdraw

our appearance." They did not hear, and the case went by default. He had a good defense, all of which was duly presented to the lower court, which refused to set aside the judgment. The Supreme Court, in reversing the action of the lower court, said:

"* * * Was, then, the overruling of the motion such an abuse of discretion, on the part of the court, as to render its action in the premises erroneous and prejudicial to the rights of the defendant? It is clearly shown that, during all the proceedings in the suit by the bank, the defendant was absent from the state on business affairs; was in the state of California, and much of the time in a remote part of that state. Immediately upon being sued, he directed the employment of competent attorneys, which was done, and then, feeling assured that the proper pleadings would be filed in his behalf and his rights protected, he continued in the pursuit of his business, and but for the unfortunate circumstances of his failure to receive the letters of his attorneys, written him while he was absent from San Francisco, and his consequent failure to answer, resulting in the withdrawal of his attorneys, without notice to him, from the case, the judgments by default would in all probability never have been entered. * * * It is true that ordinarily the setting aside of a judgment by default rests within the sound legal discretion of the court, and the appellate court will not interfere, but where, as in this case, it is made clearly to appear that there was such an abuse of discretion, through inadvertence or otherwise, as to render the action erroneous and unlawful, the appellate court will control such discretion, and set aside the illegal action. * * * No general rule can be laid down respecting the discretion to be exercised in setting aside, or refusing to set aside, a judgment by default. * * * Each case must necessarily depend upon its own peculiar facts and circumstances, but the discretion should always be so exercised as to promote the ends of justice. In the case at bar the facts and circumstances show that it was an unavoidable misfortune to the defendant that he did not know that no attorney was representing him in the proceedings which led to the entry of judgment against him until after the entry had been made. We are therefore of the opinion that the court erred in refusing to vacate the default and set aside the judgment, and in refusing to permit the defendant to plead to the merits."

Hence we are of the opinion, in view of the foregoing au-

thorities, and in view of the fact that the defense set forth in plaintiff's petition is valid and meritorious, and such as should be submitted to a jury, that the trial court did not abuse its discretion in vacating the judgment and permitting plaintiff to plead, and for that reason the judgment of the lower court is affirmed.

All the Justices concur.