## CLAUSSEN v. AMBERG.

No. 16887—Opinion Filed Sept. 14, 1926.

1. **Judgment—Motion to Vacate Default Judgment—Continuance of Motion to Following Term.**

Where a motion to vacate a default judgment is made before the end of the term at which the judgment complained of is rendered, and is continued over to the following term before the court rules upon it, it is regarded merely as unfinished business at the following term, and may be passed upon at such subsequent term, and when passed upon at such subsequent term the action of the court is the same in legal effect as if the ruling had been made at the term at which the motion was filed.

2. **Appeal and Error—Discretion of Lower Court—Vacating Judgments and Granting New Trials.**

The vacation of judgments and the granting of new trials are discretionary largely with the trial court, and unless it appears that their discretion has been abused, the appellate courts are loath to interfere.

2. **Same—Vacation of Default Judgment Sustained.**

In the instant case, the motion being one which addressed itself largely to the discretion of the trial court, after examination of the record we cannot say the court abused its discretion, and this court will not interfere, but will affirm the judgment of the trial court.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; William H. Zwick, Judge

Action by A. B. Claussen against H. Amberg to quiet title to certain lands. Service of summons by publication and judgment for plaintiffs by default. Default judgment vacated on motion of defendant, and from the order vacating default judgment plaintiff appeals. Affirmed

Twyford & Smith and Leo G. Mann, for plaintiff in error.

M. S. Singleton, for defendant in error.

Opinion by RUTH, C. Plaintiff and defendant occupying the same relative positions in this court as in the trial court, they will be designated accordingly.

Plaintiff filed his petition against H. Amberg, if living, and if dead, his unknown heirs, etc., and against M. S. Ryan, as county treasurer, alleging plaintiff was the owner of certain lands, to wit, blocks 37, 38, 39, 46, 47, and the east half of blocks 49, 50 and 51, in Brooklyn addition to Oklahoma City, and H. Amberg claimed some interest in the lands, and plaintiff prays that the county treasurer be required to cancel all taxes for 1922, and the years prior thereto, and prays his title be quieted. Petition was filed November 29, 1924, in the district court for Oklahoma county. Summons was returned "not found", as to H. Amberg on December 3, 1924, and on the same date Leo G. Mann, whose name appears upon the petition as plaintiff's attorney, made affidavit for summons by publication.

The publisher's affidavit recites that the notice of publication was published for 22 consecutive days from December 3, 1924, to December 25, 1924, and the publisher's affidavit was made on December 25, 1924, and the notice required defendant to answer on or before January 20, 1925. On December 4, 1924, Leo G. Mann made his affidavit of mailing a copy of the petition and notice of publication to H. Amberg, at Fenters ville, state of Texas, and on January 22, 1925, the court clerk's minute journal shows the following entry:

"On motion of plaintiff default of all defendants entered. One witness sworn. One deed introduced in evidence showing paramount title in plaintiff with leave to withdraw the same."

On the day following, to wit, January 23, 1925, defendant, Amberg, filed his motion to vacate the judgment, and filed his answer alleging in substance that plaintiff claimed only under a tax deed issued in 1922, which defendant alleges was void; that the affidavit for service by publication does not show the action to be one of those where service by publication may be had; that it does not show facts sufficient to give the court jurisdiction; that it does not show the defendant is a nonresident of the state of Oklahoma as required by section 290, C. O. S. 1921; that the pretended notice of publication, alleged to have been mailed to defendant on December 4, 1924, does not show the county or state in which the property sued for is located; that the property is of a value of $25.000, and the only interest the plaintiff has therein is the amount he paid for taxes, which defendant tenders to plaintiff.

On February 21, 1925, defendant filed his amendment to his motion to vacate, and answer, in which he restates the allegations of his original motion, and further states the lands were sold for 1920 taxes, which tax included a levy of 1½ mills for state purposes, and the lands were sold for taxes,

including the void levy of 1½ mills. Defendant attaches a copy of the tax deed under which plaintiff claims, and alleges the same is void upon its face. The motion and answer contains a recital of the steps taken by defendant, who was ill in bed at that time, to protect and redeem his property. On July 8, 1925, plaintiff filed his motion to strike defendant's motion to vacate and his answer. On July 14, 1925, defendant filed his second amendment to his motion to vacate, in which defendant states that at the time he received the copy of plaintiff's petition and notice by publication, there was attached thereto a letter signed by Leo G. Mann, dated August 10, 1924, or more than three and one-half months prior to the filing of the action, in which letter it was stated that "Mr. Hyde" had a valid resale deed to the property. The letter was in the following words and figures:

"August 10, 1924.

"Suit has been brought against you and others to quiet title to Oklahoma City lots, including those described in the within enclosed disclaimer.

"These lots were sold to A. B. Claussen by the county treasurer of Oklahoma county for back taxes, and Mr. Hyde has a valid resale deed. He brought this suit to secure a decree that all rights of owners, mortgagees, judgment, and lien claimants, easements, and other rights, in and to said lots, have been extinguished by said tax deed, as they have been.

"Therefore, to save you the annoyance of having the sheriff call with summons to appear in court, we herewith enclose a written disclaimer, which if you will sign and return to me at once, will dispense with the necessity of having the sheriff call upon you with summons.

"The records would indicate that you were formerly interested in some small degree in the lots described in the within enclosed disclaimer, although it may be that you were also interested in other lots described in the petition.

"Any further information will be given upon request.

"Kindly sign and return the enclosed disclaimer by mail, or personal call, within the next few days, or if you do not desire to do so, kindly advise that summons may then be promptly issued.

"Yours truly,
"Leo G. Mann.

"Leo G. Mann,

"Attorney and Counselor at Law,

"807 Tradesmen Nat. Bk. Bldg. Phone Wal. 4576,

"Oklahoma City, Okla."

Defendant alleges no disclaimer accompanied the letter, and he did not desire to disclaim, but the letter was intended to and did deceive him, and that he believed he would have until January 20, 1925, to answer, and that the sheriff would serve a summons on him, and that he was ill in bed at the time of its receipt.

On July 14, 1925, the cause came on for hearing on defendant's motion to vacate the default judgment and defendant testified he purchased the land from Miss M. E. Stinson about ten years prior to filing of the action, paid $40,000 for the property, and Miss Stinson always looked after it for him; that he had lived in Reutersville, Tex., since the day he was born, 63 years ago, and was postmaster at Reutersville. Never received notice of tax sale, or that a tax deed had been issued. Defendant wrote a letter to Miss Stinson, instructing her to pay whatever due, and enclosed checks signed in blank, also wrote the following letter to Leo G. Mann:

"H. Amberg, Wholesale & Retail Merchant, Ruetersville, Texas, Dec. 6, 1924.

"Leo G. Mann, Esq., Oklahoma City, Okla. Dear Sir: Referring to yours just received, beg to say I have requested Miss M. E. Stinson to get the full am't of taxes due by me in Oklahoma, and as soon as I hear from her will pay same so I suppose it will not be necessary for me to sign instrument sent me but in case it should be, advise me further. Respectfully yours, H. Amberg."

Miss Stinson testified she sold the land to defendant in 1910, and received $40,000 for same; was in the real estate business. On account of selling defendant the land she looked after it for him, just as a friend and not as an agent. Defendant always paid his taxes promptly when statement was sent him. Witness was away from Oklahoma City for some time, and thought Mrs. Robinson, now dead, was attending to it, and knew nothing about the sale for 1920 taxes until she met Mr. Halley, a lawyer, who wanted to know where he could locate Amberg, as they wanted to get a quitclaim deed, as Claussen, this plaintiff, wanted to borrow money on the land. She told Halley she would immediately wire Amberg, but without waiting for a reply, witness went to see Mr. Claussen, who said, "Go see Mr. Mann." She immediately went to Mr. Mann, who said, "Go see Claussen." She went to see Claussen, who said, "Go see Mann," and then witness told Claussen that Mann said he did not

have anything to do with it, and Claussen said he would see Mann and talk to her again. Witness called Claussen the next day and asked him if she could see "his papers, his tax certificates," and how much was due on the property. Claussen said he did not have the certificates. Witness said she would find out the amount due by going to the county treasurer, and asked Claussen if he would surrender the tax certificates if she paid the full amount due. Claussen said he would "go see Mann", and would see witness "tomorrow", but then Claussen said, "No, I can't see him (Mann) until day after tomorrow, and we will all meet and talk it over, but can't do it until day after tomorrow." The "day after tomorrow" was the day after plaintiff took his default judgment, and witness, on reading "The Daily Legal News," learned plaintiff had taken judgment the day prior to the day set for the conference, and she immediately consulted counsel, and the motion to vacate was filed within 24 hours after judgment rendered.

During all these visits and conferences with Claussen and his attorney, Mann, witness did not know a suit was pending, and it was never mentioned by plaintiff or his attorney, although she was visiting backward and forward between these two, more than one month before judgment was taken.

Defendant then introduced the following letters:

"Reutersville, Texas. Jan. 15, 1925. Miss M. E. Stinson, Oklahoma City, Okla. Kind Miss Stinson: Yours of the 13th inst. just received. I herewith enclose you check for $188.41. I think there should be some more taxes due. Please have the kindness to look into it fully. Respectfully yours, H. Amberg."

"Reutersville, Texas, Dec. 6, 1924. Miss M. E. Stinson, Oglahoma City, Okla. Kind Miss Stinson: Please to find out as to the taxes and write me amount due and I will remit. Thanking you for writing me. Respectfully yours, H. Amberg."

Claussen and Mann, both being recalled, did not attempt to rebut the testimony of Miss Stinson relative to her numerous calls. Claussen says she always caught him when he was busy and he referred her to Mr. Mann. Both plaintiff and his attorney admit they never mentioned the pendency of the suit to Miss Stinson, although Mann testified she, Miss Stinson, was working on the matter about a month, but she always talked "taxes", and the suit was not men-

tioned. Mann explains his letter to Amberg bearing date as of August 10, 1924, and stating Mr. Hyde held a tax deed, by saying that it was a "form letter" sent out in a "great many" suits of this character, "it was a stock form with Mr. Hyde in it, and merely used for the same purpose as in other prior suits". And it is evident if a "form letter" or "stock form" was necessary, the attorney was conducting an extensive business along this line for Mr. Hyde.

At the conclusion of the testimony the court overruled plaintiff's motion to strike defendant's motion to vacate, and sustained defendant's motion to vacate the judgment, and plaintiff appeals.

The court was not requested to state the grounds upon which it sustained the motion to vacate, and the record therefore does not disclose the grounds upon which the motion was sustained.

A careful examination of defendant's motion to vacate, and all subsequent amendments thereto, discloses valid defenses to the action if sustained by evidence, and the original motion having been filed in the term at which the judgment was rendered, the court did not lose jurisdiction of the cause merely because the court heard the motion at a subsequent term. This court has uniformly held:

"The vacation of judgments and the granting of new trials are discretionary largely with the trial court, and unless it appears that their discretion has been abused the appellate courts are loath to interfere. * * * And inasmuch as the application was one which addressed itself largely to the discretion of the trial court, under the circumstances, we cannot say he abused that discretion, so we cannot interfere with the judgment of the court below. See C., R. I. & P. R. Co. v. Maynard, 31 Okla. 685, 12 Pac. 149; Poff v. Lockridge, 22 Okla. 462, 98 Pac. 427; M., K. & T. R. Co. v. Ellis, 53 Okla. 264, 156 Pac. 266." Joiner v. James et al., 61 Okla. 268, 160 Pac. 87.

Plaintiff contends that by reason of the fact that amendments to the original motion to vacate the judgment were filed, and the motion heard and passed upon at a subsequent term, the court lost jurisdiction.

In Philip Carey Co. v. Vickers, 38 Okla. 647, 134 Pac. 853, plaintiff filed his motion during the term, and filed his amended motion during a subsequent term, and the motion was heard at such subsequent term and sustained, and an appeal was lodged in this court, where upon review the court said:

"We believe the principal question may be stated as follows: Did the inherent equitable control which the trial court is conceded to possess over its own judgment, during the term at which they are rendered, follow the motion herein, which was filed during the term, into a succeeding term, thus preserving the power of the court to control its judgment during the succeeding term in all respects the same as if· it had acted upon the motion at the same term it was filed' and the judgment vacated was rendered?"

Answering this quesion, this court said:

"The rule, however, seems to be that, when such a motion is made before the end of the term, and is duly continued over to the following term before the court rules upon it, it is regarded merely as unfinished business at the following term and may be passed upon at that time." Citing Bronson v. Schulten et al., 14 Otto (104 U. S.) 410, 26 L. Ed. 797; Loring v. Frue, 14 Otto (104 U. S.) 223, 227, 26 L. Ed. 713; Goddard v. Ordway, 101 U. S. 745, 25 L. Ed. 1040; Norton v. A., T. & S. F. Ry. Co. 97 Cal. 388, 30 Pac. 585, 33 Am. St. Rep. 198; Willson v. Cleaveland, 30 Cal. 192; Knox County Bank of Mount Vernon v. Stephen Doty et al., 9 Ohio St. 506, 75 Am. Dec. 479; Niles v. Parks et al., 49 Ohio St. 370, 34 N. E. 735.

And in Philip Carey Co. v. Vickers, supra, this court held:

"The discretionary power of the court was not lost by the continuance of the motion to the next term, and when sustained at that term, the action of the court in the premises was the same in legal effect as if the ruling had been made at the term at which the motion was filed." See Blake v. Baker, Co. Treas., 66 Okla. 88, 167 Pac. 329.

The motion to vacate the judgment being filed during the term at which the judgment complained of was rendered, the court did not lose jurisdiction to hear and determine the same at a subsequent term, and finding no abuse of discretion on the part of the trial court, the judgment is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 34 C. J. p. 263, § 487. (2) 4 C. J. p. 830, § 2813; p. 839, § 2824; 15 R. C. L. 720; 3 R. C. L. Supp. p. 489; 5 R. C. L. Supp. p. 848. (3) 4 C. J. p. 840, § 2825.