HAMMER v. STATE
2022 OK 80
Case Number: 119,429
Decided: 10/11/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 80, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

IN THE MATTER OF B. H. AND J. H., MINOR CHILDREN ANTHONY HAMMER, Respondent/Appellant,
v.
STATE OF OKLAHOMA, Petitioner/Appellee.

ON APPEAL FROM THE DISTRICT COURT OF MCINTOSH COUNTY, STATE OF OKLAHOMA

HONORABLE BRENDON BRIDGES, ASSOCIATE DISTRICT JUDGE 

¶0 On review of an order denying Father's motion to vacate a judgment for lack of jurisdiction, we affirm the district court's denial. We hold there is no abuse of discretion in denying a motion to vacate an order terminating parental rights that was finally adjudicated when nothing on the face of the judgment roll demonstrates a lack of jurisdiction. Father stipulated to the petition which listed the children's street address as within McIntosh County. The district court implicitly found Children were not residents or domiciliaries of a reservation. At no point in the original proceedings did Father or the tribe allege otherwise. No direct appeal was filed from the original order. Instead, Father brought a claim to vacate more than a year after the judgment terminating his parental rights became final. A motion to vacate is not a substitute for a timely appeal. A judgment will only be vacated as void if the lack of jurisdiction affirmatively appears on the face of the judgment roll. Because Father failed to demonstrate the judgment is void, the order of the district court denying Father's motion to vacate must be affirmed.

ORDER OF THE DISTRICT COURT IS AFFIRMED.

Anthony Hammer, Appellant, pro se.

OPINION

Darby, C.J.:

¶1 Pro Se respondent/appellant, Anthony Hammer (Father), is a member of the Cherokee Nation. In a collateral attack on an already final order, Appellant invoked McGirt v. Oklahoma, 591 U.S. ___, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020); the United States' 1866 treaty with the Cherokee, Treaty with the Cherokee, U.S.-Cherokee Nation, July 19, 1866, 14 Stat. 799; and the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 et seq., and moved to vacate the Oklahoma district court's order terminating Father's parental rights to his children, B.H. and J.H (Indian Children or Children). Father argued the order is void--that the district court never acquired jurisdiction because Children were domiciled or resided in the Muscogee (Creek) Nation's reservation.

¶2 Foremost, this appeal involves the application of Oklahoma's Civil Procedure Code for when a district court may vacate a judgment as void. See 12 O.S. 2011, § 1038. Scoufos v. Fuller, 1954 OK 363280 P.2d 720ee also Thomason v. Thompson, 1926 OK 865253 P. 99

FACTS AND PROCEDURAL HISTORY

¶3 On December 11, 2017, the Department of Human Services (DHS) through the McIntosh County District Attorney's Office filed an application to place B.H. (age 6) and J.H. (age 9) into emergency custody citing an imminent safety threat. A DHS worker's affidavit attached to the application reported Children's Cherokee tribal affiliation. The affidavit also listed Children's address prior to removal. The listed address is within the boundaries of McIntosh County, Oklahoma.

¶4 After the emergency custody hearing, the district court found ICWA applied, that the Cherokee Nation and Bureau of Indian Affairs (BIA) had been notified, and that reasonable and/or active efforts were made to prevent the breakup of Indian Children's family. The State filed a petition seeking to adjudicate Children deprived. The petition asserted the State's exercise of jurisdiction was proper pursuant to the Uniform Child Custody Jurisdiction Enforcement Act, 43 O.S. 2011, §§ 551-101et seq., and 10A O.S. 2011, § 2-2-102.

¶5 Father did not challenge the district court's exercise of jurisdiction, and voluntarily stipulated to the petition. The court initially approved a reunification permanency plan; that effort, however, failed and the court approved adoption as the new plan. After the state filed a termination petition, Father voluntarily relinquished his parental rights. On January 24, 2020, the district court entered the order terminating Father's rights. That order was a final judgment from which Father could appeal. 10A O.S. 2011, § 1-5-103(A). Father did not appeal.

¶6 Months later, on July 9, 2020, the United States Supreme Court decided McGirt, which held Congress never disestablished the Creek Nation's historical reservation. McGirt, 140 S. Ct. at 2468. As a consequence, a significant portion of eastern Oklahoma was recognized as "Indian country." Id. at 2459-60, 2468. On January 26, 2021, a year after the order was final, Father filed a motion to vacate. He argued for the first time that the McIntosh County district court never acquired jurisdiction over the proceedings, and as such, the order was void ab initio. Father claimed that only an Indian tribe could exercise jurisdiction over the termination proceedings under ICWA because Children resided or were domiciled within the historic boundaries of the Creek reservation.

STANDARD OF REVIEW

¶7 The district court's decision denying Father's motion to vacate comes to this Court "clothed with a presumption of correctness. Every fact not disputed by the record must be regarded as supportive of the trial court's ruling." Willis v. Sequoyah House, Inc., 2008 OK 87194 P.3d 1285Davidson v. Gregory, 1989 OK 87780 P.2d 679ee also Hamid v. Sew Original, 1982 OK 46645 P.2d 496

¶8 The appeal does not concern the correctness of the original order, but the correctness of the district court's response to Father's motion to vacate. Yery v. Yery, 1981 OK 46629 P.2d 357Ferguson Enters., Inc. v. H. Webb Enters., Inc., 2000 OK 7813 P.3d 480Poff v. Lockridge, 1908 OK 20998 P. 427The Encyclopedia of Pleading and Practice 287. If such sufficient ground exists for modifying or vacating a judgment, then the trial court is to "decide upon the validity of the defense offered." Id. ¶ 9, 98 P. at 429.

An application for the opening or vacation of a judgment is addressed to the sound legal discretion of the court, and while his disposition of the application may be reviewed on appeal, it will not be reversed, unless it clearly appears that this discretion has been abused . . . . The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised ex gratia, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve, and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. If it be doubtful whether the excuse offered is sufficient or not, or whether the defense set up is within or without merit in foro legis, when examined under those rules of law by which judges are guided to a conclusion, the judgment of the court below will not be disturbed.

Id. ¶¶ 16-18 (emphasis added) (citations and quotation marks omitted).

ANALYSIS

¶9 A district court's power to vacate or otherwise modify a final judgment or order is generally a matter of procedure and is limited. 12 O.S. 2011, §§ 1031-1038.See e.g., 12 O.S. 2011, § 1031McGirt, and then generally claimed the district court lacked jurisdiction.

¶10 In the original termination case, an Oklahoma state district court, not a tribal court, decided the matter. Implicit in the district court's exercise of jurisdiction was its finding that Children were not domiciled on a reservation. At no point in time did any interested party dispute the Children's status as Indian children or where they lived. Likewise no party made a direct appeal from the original order alleging as error any of the district court's findings or the court's exercise of jurisdiction. Father was represented by counsel and the tribes were involved in the district court proceedings below. It was only after McGirt -- and years after the initial petition was filed listing their specific addresses -- that Father claimed Children actually resided or were domiciled on a reservation.

¶11 Father argues this would constitute a ground to vacate the final order because such a finding would necessarily mean the state court lacked jurisdiction over the termination proceedings. Father did not refer to any specific ground in his motion, he only claimed that the district court lacked jurisdiction based on his bare assertions that Children are domiciled within the Creek reservation.

¶12 But a district court's power to vacate an order is a matter of procedure. It is only authorized to vacate its order as void for lack of jurisdiction if such defect is affirmatively shown within the framework of the Oklahoma Civil Procedure Code. 12 O.S. 2011, § 103112 O.S. 2011, § 1038Scoufos v. Fuller, 1954 OK 363280 P.2d 720

¶13 The record in this appeal includes the entirety of the court clerk's file and no more; it includes all the filings but no additional evidentiary materials. Father cannot demonstrate the original termination order is void. Further, Father fails to identify how the McIntosh County court's exercise of jurisdiction was deficient and how such defect in jurisdiction is obvious from the record.

CONCLUSION

¶14 We decide Father's appeal from the denial of a motion to vacate on procedural grounds. 12 O.S. 2011, § 1038See 12 O.S. 2011, § 1031Scoufos v. Fuller, 1954 OK 363280 P.2d 720

ORDER OF THE DISTRICT COURT IS AFFIRMED.

Darby, C.J., Kane, V.C.J., (by separate writing); and Kauger, Winchester, Edmondson, and Rowe, JJ., concur.

Combs (by separate writing), Gurich, and Kuehn, JJ., concur in result.

FOOTNOTES

Proceedings to vacate or modify a judgment, decree or order, for the causes mentioned in paragraphs 4, 5 and 7 of Section 1031 of this title must be commenced within two (2) years after the filing of the judgment, decree or order, unless the party entitled thereto be an infant, or a person of unsound mind and then within two (2) years after removal of such disability. Proceedings for the causes mentioned in paragraphs 3 and 6 of Section 1031 of this title, shall be within three (3) years, and in paragraph 9 of Section 1031 of this title, within one (1) year after the defendant has notice of the judgment, decree or order. A void judgment, decree or order may be vacated at any time, on motion of a party, or any person affected thereby.

12 O.S. 2011, § 103112 O.S. 2011, § 1031Fowler v. Goldfeder, 1966 OK 156418 P.2d 317Id. ¶ 10, 418 P.2d at 319

Davidson v. Gregory, 1989 OK 87780 P.2d 679Id. ¶11 n. 16, 780 P.2d at 682 n.16.

The district court's denial of the motion to vacate provided:

The Court finds the Petitioners [sic] argument is without merit. First, the Petitioner fails to timely assert his claim. In addition, the substance of Petitioner's claim is without merit. As McGirt v. Oklahoma, 140 S.Ct. 2452 (2020) states 'the Legislature wields significant constitutional authority when it comes to tribal relations.' Id. at 2462. McGirt deals with the intention, or lack thereof, of Congress to have disestablished the historical boundaries of the Creek Nation as it relates to claims brought under the Major Crimes Act (MCA), 18 U.S.C.A. § 1153. In the present matter, the U.S. Congress clearly expresses an intent for both State and Tribal involvement, subject to congressional legislation, in the juvenile proceedings which led to the Petitioner relinquishing his parental rights. See Indian Child Welfare Act, 25 U.S.C.A. §1901 et al. ('ICWA'). The Petitioner asserts no violation of ICWA [and] this Court finds none to exist. For the above reasons this Court DENIES the Petitioner's Motion to Vacate. Furthermore, the Petitioner's request for evidentiary hearing is DENIED.

12 O.S. 2011, § 1031.1Schepp v. Hess, 1989 OK 28770 P.2d 34

The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter:

1. By granting a new trial for the cause, within the time and in the manner prescribed in Sections 651 through 655 of this title;

2. As authorized in subsection C of Section 2004 of this title where the defendant had no actual notice of the pendency of the action at the time of the filing of the judgment or order;

3. For mistake, neglect, or omission of the clerk or irregularity in obtaining a judgment or order;

4. For fraud, practiced by the successful party, in obtaining a judgment or order;

5. For erroneous proceedings against an infant, or a person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings;

6. For the death of one of the parties before the judgment in the action;

7. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending;

8. For errors in a judgment, shown by an infant in twelve (12) months after arriving at full age, as prescribed in Section 700 of this title; or

9. For taking judgments upon warrants of attorney for more than was due to the plaintiff, when the defendant was not summoned or otherwise legally notified of the time and place of taking such judgment.

12 O.S. 2011, § 1038See also Pettis v. Johnston, 1920 OK 224190 P. 681

Mayhue v. Mayhue, 1985 OK 68706 P.2d 890

 

 

KANE, V.C.J., concurring specially:

¶1 I concur with the majority's holding that the trial court did not abuse its discretion by denying Father's motion to vacate, as well as its reasoning that no jurisdictional defect is apparent from the face of the judgment roll. I write separately to more specifically analyze whether subject matter jurisdiction or personal jurisdiction was lacking in this case.

¶2 Father argues the judgment terminating his parental rights should be vacated for "lack of jurisdiction." He does not indicate whether he is challenging the State district court's exercise of subject matter jurisdiction or personal jurisdiction. The majority opinion and the opinion concurring in result also use the general term "jurisdiction." Neither opinion indicates whether it finds no facial defect as to subject matter jurisdiction, personal jurisdiction, or both.

¶3 It is imperative that the courts (and litigants) differentiate between personal jurisdiction, subject matter jurisdiction, and other procedural limitations when a final judgment is being collaterally attacked. Why? Because personal jurisdiction and other errors are waivable; subject matter jurisdiction is not.

¶4 A void judgment may be vacated at any time. See 12 O.S.2021 § 1038See House v. Town of Dickson, 2007 OK 57193 P.3d 964

¶5 A primer on two fundamental concepts of civil (and criminal) procedure--personal jurisdiction and subject matter jurisdiction--is helpful. Personal jurisdiction is the requirement that the court has power over the parties. See Conoco, Inc. v. Agrico Chem. Co., 2004 OK 83115 P.3d 829In personam jurisdiction is the power to deal with the person of the defendant and to render a binding judgment against the defendant."). Personal jurisdiction is acquired by service of process or by voluntarily appearing before the court. Id. The parties may consent to or waive the personal jurisdiction requirement. See 12 O.S.2021 § 2012Powers v. Dist. Court of Tulsa Cty., 2009 OK 91227 P.3d 1060See State ex rel. Okla. Bar Ass'n v. Mothershed, 2011 OK 84264 P.3d 1197

Upon the filing of a petition, the assumption of the custody of a child, or issuance of an emergency custody order pursuant to the provisions of the Oklahoma Children's Code, the district court shall obtain jurisdiction over any child who is or is alleged to be deprived. Jurisdiction shall also be obtained over any parent, legal guardian, or custodian of and any other person living in the home of such child who appears in court or has been properly served with a summons pursuant to Section 1-4-304 of this title.

10A O.S.2021 § 1-4-101(A)(1).

¶6 An inspection of the judgment roll reveals that Father was properly served with the summons and that he appeared (in custody) and participated in the proceedings to adjudicate the children deprived and terminate his parental rights.

¶7 Subject matter jurisdiction is the requirement that the court has the power to adjudicate the type of controversy. See In re A.N.O., 2004 OK 3391 P.3d 646See Okla. Const. art. 7, § 7; Jernigan v. Jernigan, 2006 OK 22138 P.3d 539unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article . . . ." Okla. Const. art. 7, § 7 (emphasis added). Oklahoma district courts are courts of general jurisdiction, meaning they have the power to adjudicate nearly every type of controversy, civil and criminal, that arises within the State's territorial boundaries.See A.N.O., 2004 OK 33

¶8 The judgment roll evidences the types of controversies presented in this case: the adjudication of a child's deprived status, child custody, and the State's petition to terminate parental rights. The general subject matter jurisdiction granted to the district courts by the Oklahoma Constitution includes the power and authority to adjudicate these types of controversies. The Oklahoma district court had subject matter jurisdiction over this child custody proceeding.

¶9 Two or more courts may have jurisdiction over the same type of controversy or subject matter. This is referred to as concurrent jurisdiction. For example, Oklahoma district court may share concurrent jurisdiction with another state, federal, or tribal court. When two courts share concurrent jurisdiction, either court can exercise jurisdiction. However, there may be procedural limitations that determine which court should exercise jurisdiction or which court has priority to exercise jurisdiction. See e.g., Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36 (1989) (recognizing 25 U.S.C. § 1911(b) "creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation . . . ."); see In re Teagan K.-O., 242 A.3d 59, 78-83 (2020) (holding the UCCJEA does not confer subject matter jurisdiction on the courts but instead determines which state is permitted to exercise its existing subject matter jurisdiction when there is concurrent jurisdiction).

¶10 Father's unspecified claim of "lack of jurisdiction" invokes 25 U.S.C. § 1911(a) of the Indian Child Welfare Act (ICWA), which provides that "an Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." 25 U.S.C. § 1911(a). Father argues that because the Children are Indian and they were domiciled within the Creek Reservation, either the Cherokee Nation or the Muscogee (Creek) Nation has exclusive jurisdiction over the proceedings.

¶11 Section 1911(a) of ICWA, read in a vacuum, "establishes exclusive [subject matter] jurisdiction in the tribal courts for proceedings concerning an Indian child 'who resides or is domiciled within the reservation of such tribe,' as well as for wards of tribal courts regardless of domicile." Holyfield, 490 U.S. at 36 (quoting 25 U.S.C. § 1911(a)). Absent an intergovernmental agreement pursuant to 25 U.S.C. § 1919(a), a tribal court could be argued to have exclusive jurisdiction over this child custody proceeding.subject matter jurisdiction. See In re Parental Rights as to S.M.M.D., 272 P.3d 126, 127, 131-33 (Nev. 2012) (holding the State district court did not lack subject matter jurisdiction because the Tribe and the State entered into an agreement which provided for concurrent jurisdiction under 25 U.S.C. § 1919(a)). Therefore, the judgment is not void for lack of subject matter jurisdiction.

¶12 Any alleged error based on the State district court's failure to transfer the case to the tribal court pursuant to 25 U.S.C. § 1911(b) was waived when the transfer was not requested by Father in the proceeding below. Section 1911(b) is a procedural limitation that prescribes circumstances under which the State district court should yield to the tribal court's exercise of concurrent subject matter jurisdiction, but it does not remove the State district court's constitutionally-conferred subject matter jurisdiction to adjudicate child custody.

¶13 The holding in McGirt was that the Creek Reservation was never disestablished. See McGirt v. Oklahoma, 140 S. Ct. 2452, 2468 (2020). The effect of that decision is that now a significant portion of eastern Oklahoma is considered Indian country for purposes of the Major Crimes Act (MCA), 18 U.S.C. §§ 1151, 1153. Several federal and state laws borrow the MCA's definition of Indian country,McGirt upon other statutes that borrow the definition of Indian country from the MCA is not before us. Other collateral attacks on final judgments based on this new understanding of what is a reservation in Oklahoma may raise waivable issues or other procedural bars to relief not presented herein.

FOOTNOTES

43 O.S.2011 §§ 551-101

See Okla. Const. art. 7, § 1. Only by giving these courts exclusive jurisdiction over certain types of controversies, has the district court's subject matter jurisdiction over those limited matters been withdrawn.

"Reservation" means Indian country as defined in section 1151 of Title 18 and any lands, not covered under such section, title to which is either held by the United States in trust for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to a restriction by the United States against alienation . . . .

25 U.S.C. § 1903(10) (emphasis added).

 

 

COMBS, J., with whom GURICH and KUEHN, JJ., join, concurring in result:

¶1 I concur in the majority opinion's result affirming the trial court's denial of Father's motion to vacate the judgment terminating his parental rights, but write separately to explain the basis upon which I would affirm.

¶2 The majority opinion affirms denial of Father's motion to vacate on purely procedural grounds, finding that he "has not and cannot show the original termination order is void" for lack of jurisdiction based on anything within the judgment roll. See Majority Op. ¶¶ 11, 14. The majority holds that Father "has not" carried his burden because he came with only "his bare assertions that Children are domiciled within the Creek reservation." See id. ¶ 11. The majority holds Father "cannot" carry his burden because voidness of the judgment cannot be demonstrated using extrinsic evidence. The majority believes Father needs extrinsic evidence to demonstrate that the Children's address--which is contained in the judgment roll--is located on a tribal reservation. See id. ¶¶ 10, 12, 14 & n.7. Essentially, the majority faults Father for failing to predict the future outcome in McGirt v. Oklahoma, 591 U.S. ---, 140 S. Ct. 2542 (2020).

¶3 Instead of focusing on a procedural issue, the majority should have analyzed the jurisdictional argument that Father's appeal raises. Father argues on appeal that, under § 1911(a) of ICWA, the tribal court would "have jurisdiction exclusive as to any State" over his proceeding for termination of parental rights because "the minor children were domiciled at [an address in] Eufaula, OK, which [according to McGirt] lies within the Muscogee Creek Nation." Appellant's Pet. in Error ex. C; Appellant's Br. 1 (quoting 25 U.S.C. § 1911(a)). Thus, Father squarely raises the legal issue of whether ICWA deprives the state court of jurisdiction over these child custody proceedings such that its judgments should be vacated. Had the majority addressed this legal issue, it would have reached the same result.

¶4 To resolve the issue Father raises, this Court must consider the whole of ICWA. See In re I.T.S., 2021 OK 38490 P.3d 127In re M.S., 2010 OK 46237 P.3d 161

§ 1911. Indian tribe jurisdiction over Indian child custody proceedings

(a) Exclusive jurisdiction

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

(b) Transfer of proceedings; declination by tribal court

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.

25 U.S.C. § 1911(a)--(b) (2012). But we cannot consider § 1911 alone. Section 1919 of ICWA provides a mechanism for avoiding § 1911's default rule:

§ 1919. Agreements between States and Indian tribes

(a) Subject coverage

States and Indian tribes are authorized to enter into agreements with each other respecting care and custody of Indian children and jurisdiction over child custody proceedings, including . . . agreements which provide for concurrent jurisdiction between States and Indian tribes.

Id. § 1919(a). To the extent such treaties or "agreements" exist, they are incorporated into the existing body of law that governs this appeal.

¶5 Here, there were such agreements between Oklahoma and each of the two involved tribes, i.e., the Muscogee (Creek) Nation and the Cherokee Nation. Shortly after the U.S. Supreme Court handed down McGirt in July of 2020 and before Father sought to vacate the district court's judgment in January of 2021, Oklahoma and these two tribes executed intergovernmental agreements regarding ICWA jurisdiction. See Intergovernmental Agreement Between the State of Oklahoma and the Muscogee (Creek) Nation Regarding Jurisdiction over Indian Children within the Nation's Reservation, Okla.-Muscogee (Creek) Nation, Aug. 4, 2020, Okla. Sec'y of State Doc. No. 50527, https://www.sos.ok.gov/documents/filelog/93632.pdf; Intergovernmental Agreement Between the State of Oklahoma and the Cherokee Nation Regarding Jurisdiction over Indian Children within the Nation's Reservation, Okla.-Cherokee Nation, Sept. 1, 2020, Okla. Sec'y of State Doc. No. 50566, https://www.sos.ok.gov/documents/filelog/93672.pdf. These intergovernmental agreements received post hoc endorsements from the Oklahoma Legislature via its amendment of the Oklahoma Indian Child Welfare Act in April of 2021. See Act of Apr. 23, 2021, ch. 186, § 1, 2021 Okla. Sess. Laws Serv. 595, 595--96 (codified at 10 O.S.2021, ch. 1B, § 40.7and create concurrent jurisdiction on the reservation of the [respective] Nation with the State of Oklahoma and its political subdivisions." Intergovernmental Agreement Between the State of Oklahoma and the Muscogee (Creek) Nation, supra, § I, at 1 (emphasis added); Intergovernmental Agreement Between the State of Oklahoma and the Cherokee Nation, supra, § I, at 1 (emphasis added). Along those lines, both intergovernmental agreements provide:

Within the reservation boundaries of the Tribe, the State of Oklahoma and the Tribe shall share concurrent jurisdiction over any Indian child domiciled within the reservation, except as follows:

(1) The Tribe shall retain exclusive jurisdiction over any child custody proceeding involving an Indian child domiciled or located on:

(A) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same; or

(B) land held in trust by the United States on behalf of an individual Indian or the Tribe;

or

(C) land owned in fee by the Tribe, if the Tribe--

(i) acquired fee title to such land, or an area that included such land, in accordance with a treaty with the United States to which the Tribe was a party; and (ii) never allotted land to a citizen or member of the Tribe.

(2) Where an Indian child is a ward of the Tribe's court, the Tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

Intergovernmental Agreement Between the State of Oklahoma and the Muscogee (Creek) Nation, supra, § IV, at 2--3 (emphasis added); Intergovernmental Agreement Between the State of Oklahoma and the Cherokee Nation, supra, § IV, at 2--3 (emphasis added). Essentially, this provision restores the definition of "reservation" or "Indian Country" to its pre-McGirt meaning. Both intergovernmental agreements also contain a provision addressing "RETROACTIVITY," stating in relevant part that "[t]he Tribe hereby ratifies and agrees to extend full faith and credit to all child custody determinations rendered in any state court prior to this Agreement, except those child custody determinations involving an Indian child domiciled or located on lands identified in Section IV(1), and consent [sic] not to petition to invalidate any such action under 25 U.S.C. § 1914 on the basis that such action violated § 1911(a)." Intergovernmental Agreement Between the State of Oklahoma and the Muscogee (Creek) Nation, supra, § X, at 6; Intergovernmental Agreement Between the State of Oklahoma and the Cherokee Nation, supra, § X, at 6. Thus, both tribes have agreed to continue business as usual despite McGirt and not to use McGirt to disrupt any finalized proceedings.

¶6 The district court's finding that there has been no violation of ICWA is correct. The tribes' execution of the intergovernmental agreements restored the pre-McGirt interpretation of § 1911(a), and Father failed to request transfer of jurisdiction under § 1911(b) during the child custody proceedings, see Majority Op. ¶ 5 ("Father did not challenge the district court's exercise of jurisdiction, and voluntarily stipulated to the petition [seeking to adjudicate the children as deprived] . . . . [and] voluntarily relinquished his parental rights."). Thus, the district court did not abuse its discretion in denying Father's motion to vacate, and its order denying Father's motion to vacate should be affirmed.