# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-4053

FRANK MOORE,

*Petitioner-Appellant,*

v.

KEITH E. OLSON, **Warden, United States Penitentiary, Terre Haute, Indiana,**

*Respondent-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01 C 9842—**Robert W. Gettleman**, *Judge.*

———————

ARGUED APRIL 2, 2004—DECIDED MAY 17, 2004

———————

Before EASTERBROOK, MANION, **and** WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* **The caption of this opinion reveals a problem: federal judges are entitled to issue writs of habeas corpus "within their respective jurisdictions", 28 U.S.C. §2241(a), and Indiana lies outside the Northern District of Illinois. When the case began, the respondent was the Warden of the United States Penitentiary at Leavenworth, Kansas, which is not even within the Seventh Circuit. Surprisingly, the district court held that it was**

nevertheless authorized to adjudicate the petition. 284 F. Supp. 2d 1092 (N.D. Ill. 2003). Almost as surprisingly, the respondent, having contested jurisdiction vigorously in the district court, ignored that subject on appeal, apparently believing that a victory on the merits (the district judge denied Moore's petition) was superior to a jurisdictional dismissal. We raised at oral argument the question whether a custodian located outside a judicial district is authorized to consent to a decision on the merits. See *Ahrens v. Clark*, 335 U.S. 188, 193 (1948) (holding that because the parties' location is a "jurisdictional" question on collateral review, a custodian's waiver or forfeiture is ineffectual). In post-argument filings, Moore's custodian switched sides again, insisting that the district court lacked subject-matter jurisdiction and that the issue therefore can be neither waived nor forfeited. We conclude, to the contrary, that after *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484 (1973), which overruled *Ahrens*, the location of a collateral attack is best understood as a matter of venue, which means that both waiver and forfeiture are possible.

The Parole Commission revoked Moore's parole after concluding that he had committed a murder. While an administrative appeal was pending, and Moore was held at the Metropolitan Correctional Center in Chicago, he filed a petition under §2241(a). The district court correctly dismissed this petition as premature, for Moore had yet to exhaust his administrative remedies. By the time the Commission's decision became final, Moore was at USP Leavenworth. Instead of filing a petition in Kansas, however, Moore asked the judge to reopen the proceeding in Illinois. The judge obliged and held that this maneuver enabled the court to assert jurisdiction over Moore's new custodian. That decision is hard to reconcile with the principle that the litigation must occur in the district of the prisoner's custody. See, e.g., *al-Marri v. Rumsfeld*, 360 F.3d 707 (7th Cir. 2004). A prisoner transferred while litigation

is pending need not re-file in the new district, see *Ex parte Endo*, 323 U.S. 283 (1944), but no suit was pending when Moore left Illinois for Kansas. Filing new pleadings in a long-dismissed action—and naming a different respondent to boot—does not alter the fact that district judges may resolve claims under §2241 only when the custodian is local. Perhaps the old action could have been revived had Moore remained in Chicago, but an action against a different custodian is a new action, which should have commenced in Kansas.

Having prevailed on the merits, however, the Warden of Leavenworth initially elected not to contest this issue on appeal. He switched sides in a post-argument memorandum. This is not the only problem linked to the location of Moore's custody. The Department of Justice, which both operates the Federal Bureau of Prisons and represents the warden, appears to have disregarded Fed. R. App. P. 23(a), which requires judicial approval of transfer during appellate review of a proceeding seeking a writ of habeas corpus. Moore has been moved to USP Terre Haute without any judge's permission. Counsel also violated Circuit Rule 43, which requires notice to this court that a prisoner has been moved and substitution of the new custodian. The Department's brief and post-argument memorandum both identify N.L. Conner, the Warden of Leavenworth, as the respondent even though Moore was transferred to Terre Haute earlier. Moore has not sought return to Leavenworth, and no other remedy would be appropriate, but the performance of the Department of Justice in this court is a disappointment.

Defendants are entitled to waive any shortcomings in venue or jurisdiction over the person; these issues also may be forfeited by failure to present them at the proper time. Defects in subject-matter jurisdiction, however, may not be waived or forfeited. Courts often use the word "jurisdiction" when referring to §2241(a)'s requirement—understandably,

as the word appears in the statute—but without distinguishing among subject-matter jurisdiction, jurisdiction over the person of the custodian, and the court's territorial extent (a species of venue). *Ahrens* must have assumed that the issue is one of subject-matter jurisdiction, as it said that the issue could not be waived, but did not explain why. *Braden* overruled *Ahrens* but did not distinguish between rejecting its technical holding— which was that the presence of the *detained* person (in addition to the custodian) within the territory of the federal judicial district is essential—and disapproving its assumption that the locus of the suit concerns subject-matter jurisdiction. In between these two decisions, *Schlanger v. Seamans*, 401 U.S. 487, 490-91 (1971), referred to the matter as one of "territorial jurisdiction", which implies that the issue is one of venue rather than either subject-matter or personal jurisdiction, but once again the Court did not explain why.

Section 2241(a) uses the word "jurisdiction" in a way that suggests equivalence to "the territory within the judicial district." *Braden* holds that the detained person need not be in that district. This decision allows a petitioner serving consecutive sentences (or facing trial in another state) to challenge his future custody as well as his current custody, provided that the litigation takes place where the custodian may be found. We did not need to choose in *al-Marri* among the ways to characterize this requirement. *Braden* suggests, however, that it is a matter of both jurisdiction over the person (the custodian must be within reach of the district court's process) and venue, with §2241 taken as a special venue rule superseding 28 U.S.C. §1391(e) to the extent of any conflict. That is the implication not only of §2241(a) but also of §2241(d), which provides that, when a prisoner sentenced within one part of a state that has multiple federal districts is being held outside that district but still within that state, the petition may be filed in the district where the sentence was imposed. Section 2241(d) is so

clearly a special venue provision that it becomes jarring to read §2241(a) as a rule of subject-matter jurisdiction; if it were so read, it would nullify the effect of §2241(d). All of the subsections make sense, however, if understood to determine the venue of collateral litigation. The need for personal jurisdiction over the custodian comes from general principles outside §2241 itself. Subject-matter jurisdiction, however, is supplied by 28 U.S.C. §1331, as any claim under §2241 entails a federal question.

Because the word "jurisdiction" is such a chameleon, referring (according to context) to the adjudicatory competence of the court, the amenability of the defendant to process in the district, the territory of the judicial district, the time at which critical documents (e.g., a claim in bankruptcy) are filed, and many other subjects, it becomes easy to confuse those jurisdictional issues that a court must raise on its own with those that the parties may waive or forfeit. The Supreme Court observed in *Kontrick v. Ryan*, 124 S. Ct. 906 (2004), and reiterated in *Scarborough v. Principi*, No. 02-1657 (May 3, 2004), slip op. 9-11, that only the limits of federal courts' adjudicatory competence should be sorted into the subject-matter-jurisdiction bin. If Congress has authorized federal courts to resolve particular claims, and if the claim presents a case or controversy within the scope of Article III, then federal courts have subject-matter jurisdiction. These conditions are satisfied here: Congress has authorized the federal judiciary to resolve Moore's claim of entitlement to immediate release, and his petition falls within Article III. Whether that litigation should take place in Illinois or Kansas is a question of venue, not of subject-matter jurisdiction. Warden Conner, the respondent when the post-exhaustion litigation began, has not contested service of process and could not do so, as Fed. R. Civ. P. 4(i)(2)(A) creates national service for federal employees sued in their official capacities. Thus only venue is at stake, and the defense of improper venue was forfeited when it

was omitted from the custodian's opening brief.

On to the merits. The Parole Commission concluded that Moore killed Gary Horton, a crime of which he was convicted by a jury in a state prosecution. The state's appellate court reversed the conviction after concluding that the evidence was insufficient to demonstrate guilt. See *People v. Moore*, No. 2-99-0564 (Ill. App. 2d Dist. Nov. 28, 2000). Moore insists that this decision shows that he did not commit the offense, and thus that his parole cannot be revoked, but to say that a charge has not been established beyond a reasonable doubt is *not* to say that the accused was innocent. That is why a criminal act may be taken into account in federal sentencing (for a different offense) even after a jury has acquitted the defendant. See *United States v. Watts*, 519 U.S. 148 (1997). Moore received a federal hearing, and the Commission concluded by a preponderance of the evidence (the right standard) that he had murdered Horton. On review under §2241(a), the only question is whether some evidence supports the Commission's decision. See *Kramer v. Jenkins*, 803 F.2d 896 (7th Cir. 1986). To this question the answer is yes.

Moore had been in Horton's company on the final night of Horton's life (so much is common ground), and after a dispute about drug money Horton ended up dead—shot and then burned. Etta Bunch, Moore's companion that evening, told the police (and testified at Horton's state trial) that she, Moore, and Horton spent much of that evening cruising in Moore's van. According to Bunch, she was dozing in the back seat in a drug-induced stupor when she heard two or three bangs; by the time she was fully alert Horton was gone. Police recovered two spent cartridges at the place where Bunch said she had heard the bangs. A cellmate to whom Moore explained his role in the events testified at the state trial that Moore had confessed killing Horton. Moore contends that this evidence was unreliable, and that may well be. Jailhouse informants do not have sterling track

records. Moreover, Bunch later changed her story and insisted that Moore had dropped Horton off at a friend's house that evening (an undisputed point) and never again picked him up (a hotly disputed point). If Bunch's second version is correct, then Moore did not kill Horton—at least not in the way Bunch and the informant described the events. But this just shows that there was a tough factual issue for the Commission. It resolved credibility matters adversely to Moore, and collateral review under §2241 does not permit the federal judiciary to make an independent decision. The district judge deemed it significant that the jailhouse informant related that Horton had been burned after the shooting, a fact not released to the public. Moore maintains that knowledge of Horton's burning could have reached the informant after Moore discussed discovery material with a different prisoner, and if so the inference that Moore confessed to the informant is not as strong, but the fact remains that there is some evidence that Moore was the killer. The resulting incarceration is not "punishment for a murder he did not commit," as Moore would have it, but insistence that he complete his federal sentence for armed robbery, the crime from which he had been paroled. Moore concedes violating the terms of his parole by becoming involved in drugs; the Commission found that he also had possessed a firearm, a second violation; that the Commission thought his final tally of transgressions even longer, and the appropriate response a return to prison until mandatory release in 2005, is not so obviously unsupported that relief under §2241 is warranted.

                                                    AFFIRMED.

**A true Copy:**

**Teste:**

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—5-17-04