In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-3245

IN RE: KEVIN T. HALL,

*Petitioner.*

Petition for a Writ of Mandamus

SUBMITTED FEBRUARY 2, 2021 — DECIDED FEBRUARY 12, 2021

Before EASTERBROOK, KANNE, and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge*. Kevin Hall is a federal prisoner who is pursuing a petition under 28 U.S.C. § 2241. When he filed his action, he was incarcerated at a facility operated by the federal Bureau of Prisons in the Southern District of Indiana, where he filed his section 2241 petition. See *Hall v. Watson*, No. 1:19-cv-00478-JPH-MJD (S.D. Ind.). Hall has since been transferred to a federal prison in the Middle District of Florida. Shortly after that transfer, the district court in Indiana concluded that it had lost jurisdiction over the petition, and it transferred Hall's case to Florida. See *Hall v. Watson*, No. 5:20-cv-00541-BJD-PRL (M.D. Fla.).

Hall is now asking this court to issue a writ of mandamus to the Indiana district court rescinding the order of transfer

and bringing the case back to Indiana. He relies on cases that hold that a prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction. See *Ex parte Endo*, 323 U.S. 283 (1944); see also *Moore v. Olson*, 368 F.3d 757, 758 (7th Cir. 2004); *Barden v. Keohane*, 921 F.2d 476, 477 n.1 (3d Cir. 1990). Hall is correct. We hereby issue a writ to the district court directing it to rescind the transfer order and return the case to the Southern District of Indiana. We emphasize that it is the case that is being returned to Indiana, not Hall himself.

A brief explanation for this decision is in order. The leading decision on this point, *Ex parte Endo*, *supra*, comes from the World War II era. The petitioner, Mitsuye Endo, an American citizen of Japanese descent, had been sent by the U.S. authorities to a war relocation center in northern California. In July 1942, she filed a petition for a writ of habeas corpus in the U.S. District Court for the Northern District of California, seeking her freedom. That court denied her petition, and she began the process of appealing to the Ninth Circuit. Before that court could hear the case, however, she was sent to a second relocation center in Utah.

The merits of Endo's case are not important for our purposes, though it bears mentioning that the Supreme Court held that she was entitled to an unconditional release. 323 U.S. at 304. What is of interest is the Court's discussion of the jurisdiction of the district court in California to issue the writ of habeas corpus, given the fact that Endo had been moved to Utah while the case was ongoing. After noting that there was a government official—the Acting Secretary of the Interior—who was within the jurisdiction of the California district court

and who could thus carry out any order that court issued in Endo's case, the Court held that "the District Court acquired jurisdiction in this case and that the removal of Mitsuye Endo did not cause it to lose jurisdiction where a person in whose custody she is remains within the district." *Id.*

That sounds clear enough, but the district court thought that the Supreme Court's decision in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), abrogated that aspect of *Endo*. But the Supreme Court did not say that in *Padilla*. It is not up to the lower courts to disregard a decision that the Supreme Court itself has not overruled. Perceived inconsistency of result, as we have noted before, does not give a green light for a lower court to pick and choose which Supreme Court decision to follow. See, *e.g.*, *Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago*, 567 F.3d 856, 857 (7th Cir. 2009), rev'd on other grounds, *McDonald v. City of Chicago*, 561 U.S. 742 (2010). And in any event, *Padilla* does not create a serious conflict with *Endo*. *Padilla* dealt with a different question: how to identify at the outset the proper venue for a petition for a writ of habeas corpus, which in turn requires identifying the proper respondent. In the wake of the 9/11 attacks, Jose Padilla had been detained by the Department of Defense as an enemy combatant. He was arrested at Chicago's O'Hare airport, moved briefly to the Southern District of New York (where the material witness warrant had been issued), and finally relocated to the Consolidated Naval Brig in Charleston, South Carolina. The Brig was under the command of Commander Melanie A. Marr.

Padilla was in the Brig at the time his habeas corpus petition was filed, and that fact was central to the Supreme Court's holding. His custodian was thus Commander Marr, whom the Court held was the proper respondent for any

challenge to his custody. In the course of doing so, it ex-
plained why its holding was consistent with *Endo*. It is worth
setting out this reasoning at length:

> At first blush *Ex parte Endo* … might seem to lend
> support to Padilla's "legal control" argument. There, a
> Japanese-American citizen interned in California by
> the War Relocation Authority (WRA) sought relief by
> filing a § 2241 petition in the Northern District of Cali-
> fornia, naming as a respondent her immediate custo-
> dian. After she filed the petition, however, the Govern-
> ment moved her to Utah. Thus, the prisoner's immedi-
> ate physical custodian was no longer within the juris-
> diction of the District Court. We held, nonetheless, that
> the Northern District acquired jurisdiction in this case
> and that Endo's removal … did not cause it to lose ju-
> risdiction where a person in whose custody she is re-
> mains within the district. … We held that, under these
> circumstances, the assistant director of the WRA, who
> resided in the Northern District, would be an appro-
> priate respondent to whom the District Court could di-
> rect the writ. …
>
> While *Endo* did involve a petitioner challenging her
> present physical confinement, it did not … hold that
> such a petitioner may properly name as respondent
> someone other than the immediate physical custo-
> dian. … Rather, the Court's holding that the writ could
> be directed to a supervisory official came not in our
> holding that the District Court initially acquired juris-
> diction—it did so because Endo properly named her
> immediate custodian and filed in the district of con-
> finement—but in our holding that the District Court

could effectively grant habeas relief despite the Government-procured absence of petitioner from the Northern District. Thus, *Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.

542 U.S. at 440–41 (cleaned up).

Hall's petition mirrors Endo's: he filed in the correct court and named his immediate custodian, and only later was he moved to a different place of detainment. And as in *Endo*, there is a respondent within the jurisdiction of the original court that has the authority to comply with any order that may issue. Throughout these proceedings, the Bureau of Prisons has been Hall's ultimate custodian. Just as the Acting Secretary of the Interior could respond to the court's order in *Endo*, the Bureau can take any necessary action here.

In closing, we briefly address several other arguments the government has presented in opposition to the writ of mandamus. First, it contends that Hall may not challenge the transfer until he appeals from the final judgment. But this is incorrect. As we recently pointed out, "[w]ithout the availability of mandamus relief, the question of proper venue escapes meaningful appellate review." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707 (7th Cir. 2020). Mandamus is the proper vehicle for obtaining review of a transfer decision, including transfers of a habeas corpus proceeding. *Hicks v. Duckworth*, 856 F.2d 934, 935 (7th Cir. 1988).

Second, the government contends that Hall has an adequate remedy through a separate motion under 28 U.S.C. § 2255 that he has pending. But it is mixing apples and oranges. The merits of Hall's section 2241 petition are not before us. We are considering only the venue for that petition. It will be up to the responsible court to decide how his section 2255 motion relates to the section 2241 petition.

Finally, the government argues that Hall has suffered no prejudice from the venue transfer, because the Florida district court and the Eleventh Circuit can handle the matter. But that argument proves too much—the same could have been said of the distinction between the Southern District of New York and the District of South Carolina in *Padilla*. Hall did not need to show prejudice before pursuing his venue challenge. We note as well that there are often subtle, or not-so-subtle, differences in the law of the various circuits. It appears here that the Eleventh Circuit varies from most of its sister circuits in its views on the availability of section 2241 for federal prisoners. See *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1091 (11th Cir. 2017).

We hereby order the district court for the Southern District of Indiana to rescind its order of transfer to the Middle District of Florida. The district court must also notify the district court in Florida where Hall's case is now pending that it must relinquish its jurisdiction and send the file back to Indiana.

SO ORDERED.