OSCN Found Document:IN THE MATTER OF S.J.W.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 IN THE MATTER OF S.J.W.
2023 OK 49
Case Number: 119404
Decided: 04/25/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 49, __ P.3d __

 

 

IN THE MATTER OF S.J.W., MINOR CHILD

STEPHEN and MORGAN WILBURN Respondents/Appellants,
v.
STATE OF OKLAHOMA, Petitioner/Appellee.

ON APPEAL FROM THE DISTRICT COURT OF CARTER COUNTY,
STATE OF OKLAHOMA

HONORABLE DENNIS MORRIS, DISTRICT JUDGE

¶0 The deprived adjudication of a Muscogee (Creek) Indian child domiciled in the Chickasaw Nation's reservation results in concurrent state and tribal jurisdiction. 25 U.S.C. § 1911(b) (2018). Under the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 et seq., an Indian tribe has exclusive territorial jurisdiction over member Indian children domiciled within the external boundaries of their reservation. 25 U.S.C. § 1911(a). ICWA does not oust the State of its subject matter jurisdiction.

MOTION TO DISMISS IS DENIED; ORDER OF THE DISTRICT COURT
IS AFFIRMED.

Phillip P. Owens II, OWENS LAW OFFICE, PC, Oklahoma City, Oklahoma, for Respondents/Appellants,

Jessica L. Dice, CARTER COUNTY DISTRICT ATTORNEY'S OFFICE, Ardmore, Oklahoma, for Defendant/Appellee.

OPINION

Darby, J.:

SUMMARY

¶1 After the Carter County District Court adjudicated S.J.W., child, deprived, Parents (Appellants) appealed. S.J.W., through child's attorney, filed a motion to dismiss the appeal for lack of subject matter jurisdiction. S.J.W. claims the Chickasaw Nation has exclusive jurisdiction pursuant to 25 U.S.C. § 1911(a) based on the plain language in the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 et seq., because S.J.W. resides within the Chickasaw reservation, notwithstanding the fact that S.J.W. is an Indian child and member of the Muscogee (Creek) Nation. Parents adopted S.J.W.'s argument as their first proposition of error. Alternatively, Parents argue if the district court does have jurisdiction, the trial court denied them due process in failing to complete the adjudication within the statutory time period allowed per 10A O.S. 2011, § 1-4-601(B)(2) ("If the adjudicatory hearing is delayed pursuant to this subsection, the emergency custody order shall expire unless the hearing on the merits of the petition is held within one hundred eighty (180) days after the actual removal of the child.").

¶2 On appeal, Parents raise two issues: first, whether Oklahoma courts have subject matter jurisdiction over a nonmember Indian child's deprived case arising in Carter County, which is completely within the external, territorial boundaries of the Chickasaw reservation;[1] and second, if the court does have jurisdiction, whether a delay in the adjudication hearing deprived Parents of their due process rights. With respect to the first issue, we hold the district court has subject matter jurisdiction to adjudicate S.J.W. deprived. Pursuant to 25 U.S.C. § 1911(b), the State of Oklahoma shares concurrent territorial jurisdiction with an Indian child's tribe when the Indian child is not domiciled or residing on the Indian child's tribe's reservation.[2] In our dual federalism system, an Oklahoma district court's subject matter jurisdiction may be limited by the Oklahoma or U.S. Constitution. U.S. Const., amend. X; Okla. Const. art. I, §§ 1, 7(a). In this case, the State's authority is not ousted by federal law. See 25 U.S.C. § 1911(b).

¶3 Next we find no violation of Parents' right to due process of law as any delay was not arbitrary, oppressive or shocking to the conscience of the court, and Parents had a meaningful opportunity to defend throughout the proceeding. Flandermeyer v. Bonner, 2006 OK 87, ¶ 10, 152 P.3d 195. See also In re A.M., 2000 OK 82, ¶ 9, 13 P.3d 484 ("In the context of a proceeding to terminate parental rights, the essence of procedural due process is a 'meaningful and fair opportunity to defend.'").

PROCEDURAL HISTORY

¶4 This case started in the spring of 2020, at the beginning of the COVID-19 pandemic. S.J.W. was born March 16, 2020--the same day this Court entered its first emergency order due to the outbreak of the novel coronavirus.[3] S.J.W. was taken into custody two days later on March 18, 2020.[4] At the end of March, the State filed its petition to adjudicate S.J.W. deprived. The State alleged: Morgan Rippetoe,[5] Mother, and Stephen Craig Wilburn, Father, posed a threat of harm to S.J.W.; reported Mother had mental health issues; and that both Parents have a history of domestic violence. The petition claimed the district court had jurisdiction pursuant to the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), 43 O.S. 2011, §§ 551-101 et seq., and 10A O.S. 2011, § 2-2-102, and that ICWA and the Oklahoma Indian Child Welfare Act, 10 O.S.2011, §§ 40, et seq. applied because S.J.W. was eligible for enrollment with an Indian tribe.

¶5 The State filed the notice of child custody proceedings on May 27, 2020. The notice comported with ICWA requirements, reported S.J.W.'s tribal affiliation as Muscogee Creek, and listed the initial hearing for June 23, 2020. All parties appeared on June 23rd. On July 16th, Parents filed a motion to continue and requested additional time to present their case. The district court agreed and continued the hearing to August 5, 2020. On September 21st, Parents filed a "Motion to Dismiss Deprived Petition" claiming the delay in holding the adjudicatory hearing violated Oklahoma law and required dismissal of the State's petition. The very next day, on the State's motion, the district court set the matter for hearing within two weeks. On October 20th the State filed its witness and exhibit list, and on the 23rd of October the hearing reconvened and testimony was taken. The State's case continued to November 20th. On December 7, 2020, and February 12, 2021, Parents presented their arguments. The district court entered its order adjudicating S.J.W. deprived on February 12, 2021.

¶6 Mother and Father appealed alleging three propositions of error.[6] After the appeal commenced, S.J.W., by and through his attorney, filed a motion to dismiss the appeal for lack of subject matter jurisdiction alleging for the first time that neither the Carter County District Court nor the Oklahoma Supreme Court has subject matter jurisdiction of this case based on the United States Supreme Court's decision in McGirt v. Oklahoma, 591 U.S. ___, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020), and Bosse v. Oklahoma, 2021 OK CR 30, 499 P.3d 771. Parents adopted S.J.W.'s argument that the State lacked subject matter jurisdiction to adjudicate S.J.W. deprived. We retained this case.

STANDARD OF REVIEW

¶7 When a case comes before us on appeal, this Court has a duty to inquire into our own jurisdiction as well as the jurisdiction of the lower court. Broadway Clinic v. Liberty Mut. Ins. Co., 2006 OK 29, ¶ 25, 139 P.3d 873, 880. "When there are no contested jurisdictional facts, the question of subject matter jurisdiction is purely one of law which we review de novo." Reeds v. Walker, 2006 OK 43, ¶ 10, 157 P.3d 100, 107 (footnotes omitted). Whether a delay in the adjudication hearing constituted a due process violation is reviewed de novo. See In re A.M., 2000 OK 82, ¶ 6, 13 P.3d 484, 486-87. "De novo review requires an independent, non-deferential re-examination of another tribunal's legal rulings." Id. (citations omitted).

ANALYSIS

¶8 S.J.W. and Parents claim that the application of McGirt[7] and Bosse[8] require the dismissal of this case for lack of subject matter jurisdiction. They argue the Chickasaw tribal court has exclusive jurisdiction per 25 U.S.C. § 1911(a) regardless of the fact that S.J.W. is a nonmember Indian child. Essentially, Parents argue that if any Indian child is domiciled or residing on any Indian reservation then the tribe with the reservation has exclusive subject matter jurisdiction regardless of whether the Indian child is a member of that tribe. The first proposition of error raises two significant questions: first, whether § 1911's "jurisdiction" is subject matter jurisdiction, and second, whether § 1911(a) applies.

1. JURISDICTION OF THE DISTRICT COURT

A. SUBJECT MATTER JURISDICTION

¶9 At the heart of ICWA is its jurisdictional statute, which primarily concerns whether an Indian child's domicile is within the reservation of the Indian child's tribe. See Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36, 109 S.Ct. 1597, 1601-02, 104 L.Ed.2d 29 (1989).[9] Subject matter jurisdiction cannot be waived. See In re A.N.O., 2004 OK 33, ¶ 9, 91 P.3d 646, 649. See also In re B.H. & A.H., 2022 OK 80, ¶ 3 (Kane, V.C.J., concurring specially) (noting the importance of the type of jurisdiction at issue in ICWA's jurisdictional statutory scheme). "[T]he word 'jurisdiction' is such a chameleon." See Moore v. Olson, 368 F.3d 757, 759 (7th Cir. 2004). While courts have ascribed different meanings to the general term "jurisdiction," questions challenging the district court's subject matter jurisdiction only concern those which allege a defect in the court's adjudicatory competence. Id. (citing Kontrick v. Ryan, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)). But the word "jurisdiction" can also refer to the territory of the judicial district, among other things. Moore, 368 F.3d at 759-60.

¶10 Territorial jurisdiction refers to a sovereign's--a nation's or state's-- "prerogative to control and regulate activities within its boundaries," which "is an essential, definitional element of sovereignty." Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 921 (D.C. Cir.1984). In most instances, the locus of the person, conduct, or harm provides the basis for jurisdiction, but citizenship of an individual is also recognized as a basis to support jurisdiction. Id. at 921--22 (footnotes omitted). In some instances, "two or more [sovereigns] may have legitimate interests in prescribing governing law over a particular controversy," and therefore "these jurisdictional bases are not mutually exclusive" but rather "often give rise to concurrent jurisdiction." Id. at 922. "Concurrent jurisdiction does not necessarily entail conflicting jurisdiction. The mere existence of dual grounds of prescriptive jurisdiction does not oust either one of the regulating forums." Id. at 926.

¶11 Territorial jurisdiction, as a concept of international law, is important in our state because Oklahoma's territory includes Indian reservations. See Castro-Huerta, 2491-92.[10] This is so because "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory." See Montana v. U.S., 450 U.S. 544, 563, 101 S.Ct. 1245, 1257, 67 L.Ed.2d 493 (1981) (quotations omitted). The U.S. Supreme Court in Montana, acknowledging the tribes' limited sovereignty, explained the nature of those retained inherent powers by tribes and those divested:

"The areas in which such implicit divestiture of sovereignty has been held to have occurred are those involving the relations between an Indian tribe and nonmembers of the tribe ....

These limitations rest on the fact that the dependent status of Indian tribes within our territorial jurisdiction is necessarily inconsistent with their freedom independently to determine their external relations. But the powers of self-government, including the power to prescribe and enforce internal criminal laws, are of a different type. They involve only the relations among members of a tribe. Thus, they are not such powers as would necessarily be lost by virtue of a tribe's dependent status."

Id. citing U.S. v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303. At play in Oklahoma is the interaction of the state's general subject matter jurisdiction, which is coextensive with her territorial borders, and that of the tribe's territorial jurisdiction, which relates to the tribe's retained inherent sovereign powers as a tribal nation within the territorial boundaries of the United States. Inherent power extends to punish tribal offenders, determine tribal membership, regulate domestic relations among members, and to prescribe rules of inheritance for members. Id., 564. "But exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes and so cannot survive without express congressional delegation." Id. (citations omitted).

¶12 Different from territorial jurisdiction, Parents' and S.J.W.'s specific challenge here is to the district court's subject matter jurisdiction. Subject matter jurisdiction is the "power to deal with the general subject involved in the action" and includes the power of the court "to proceed in a case of the character presented, or power to grant the relief sought" Dutton v. City of Midwest City, 2015 OK 51, ¶ 16, 353 P.3d 532, 539 (footnotes omitted). It is primary and fundamental in every case. Pointer v. Hill, 1975 OK 73, ¶ 14, 536 P.2d 358, 361. Subject matter jurisdiction cannot be waived by the parties or conferred upon the court by the parties' consent; it may be challenged at any time in the course of the proceedings. In re A.N.O., 2004 OK 33, ¶ 9, 91 P.3d 646, 649. Subject matter jurisdiction is invoked by the pleadings filed with the district court. State ex rel. Okla. Tax Comm'n v. Texaco Exploration, 2005 OK 52, ¶ 14, 131 P.3d 705, 709; Okla. Dep't of Sec. ex rel. Faught v. Blair, 2010 OK 16, ¶ 19, 231 P.3d 645, 657--58, as corrected (Apr. 6, 2010).

¶13 To understand the extent of an Oklahoma district court's subject matter jurisdiction we start with a constitutional premise: district courts are courts of "unlimited original jurisdiction of all justiciable matters except as otherwise provided in this Article, and such powers of review of administrative action as may be provided by statute." Okla. Const. art. VII, § 7(a). Our district courts are courts of general subject matter jurisdiction, that is, general adjudicative authority. Id. State district courts are presumed to have subject matter jurisdiction. Id. The adjudicatory authority of district courts is comprehensive and only limited by the Oklahoma Constitution and the U.S. Constitution. U.S. Const., amend. X. ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."). Under our dual-federalism system of government, our state's sovereignty is concurrent with that of the federal government, but subject to limitations imposed by the U.S. Constitution and the supremacy clause. Id.; see also Lewis v. Sac & Fox Tribe of Okla. Hous. Auth., 1994 OK 20, ¶¶ 15-16, 896 P.2d 503, 510-11. When federal Indian law issues arise, we must take special care to determine if federal law preempts or ousts[11] the state of its general adjudicative authority. Id. When determining jurisdictional disputes for cases arising within the external boundaries of a reservation, we must remember that Oklahoma's sovereignty does not stop at reservation borders. Castro-Huerta, 597 U.S. at ___, 142 S. Ct. at 2488. The U.S. Constitution authorizes Oklahoma district courts to exercise jurisdiction in Indian country--Oklahoma's territory includes "Indian country." Id. at 2493.

Indian country is part of the State, not separate from the State. To be sure, under [the United States Supreme Court's] precedents, federal law may preempt that state jurisdiction in certain circumstances. But otherwise, as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country. See U.S. CONST., Amdt. 10.

Id. The general rule is that Oklahoma is "'entitled to the sovereignty and jurisdiction over all the territory within her limits.'" Id. (citing Lessee of Pollard v. Hagan, 44 U.S. (3 How.) 212, 228, 11 L. Ed 565 (1845)).

¶14 The State of Oklahoma by its Constitution has broadly authorized its district courts to exercise subject matter jurisdiction over "all justiciable matters" unless otherwise noted in the Constitution. Okla. Const. art. VII, § 7(a). Adjudicating children deprived surely is a "justiciable matter." Ibid. While the parties refer to ICWA's general reference to "jurisdiction" as "subject matter jurisdiction," we decline to accept this characterization. This is especially so given the presumption of a district court's general adjudicatory jurisdiction.[12] ICWA's jurisdictional statute is found at 25 U.S.C. § 1911. Whether § 1911's "jurisdiction" means "subject matter jurisdiction" has received little attention, but requires our review.

Section 1911 reads as follows:

(a) Exclusive jurisdiction
An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

(b) Transfer of proceedings; declination by tribal court
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.

(c) State court proceedings; intervention
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.

(d) Full faith and credit to public acts, records, and judicial proceedings of Indian tribes
The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.

25 U.S.C. § 1911(a)-(b)(emphasis added).

¶15 Subject to emergencies[13] and agreements otherwise,[14] § 1911 describes ICWA's default "dual-jurisdictional scheme" for "child custody proceedings"[15] involving "Indian Child[ren]."[16] Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36, 109 S.Ct. 1597, 1601-02, 104 L.Ed.2d 29 (1989). ICWA includes procedural and substantive standards for proceedings in state courts. Id. Under §1911, jurisdiction is either established exclusively in the tribe or concurrently with the state; it is a dichotomy. Id.; Holyfield, 36. The jurisdictional scheme places domicile as the preeminent factor; it's the connection to the forum that is the primary consideration on which jurisdiction turns. This section operates as a procedural safeguard to ensure the right sovereign decides the child custody proceeding.

¶16 The State of Oklahoma presumably has territorial jurisdiction over child custody proceedings unless ousted or preempted. U.S. Const., amend. X; § 1911(a). Oklahoma's territorial jurisdiction extends to her borders and is coextensive with the constitutional grant of subject matter jurisdiction, but the two can be confused for the other. It has been noted that

[o]ccasionally the courts have offhandedly referred to [a defect in the court's ability to act within its borders or with respect to certain persons] as going to subject-matter jurisdiction. But, confusing terminology aside, this is decidedly not a matter of subject-matter jurisdiction. The lack of notice or connection to the forum goes to personal or territorial jurisdiction. And that sort of jurisdiction has long been understood as subject to the law of preservation and waiver--in that a failure to raise a personal jurisdiction defense at the first opportunity results in a forfeiture, and the matter is not the court's to raise.

See In re adoption of B.B., 2017 UT 59, ¶135, 417 P.3d 1, 42 (Lee, A.C.J., dissenting)(emphasis added).

¶17 When a child appears before a district court judge and is subsequently determined to be a member Indian, the district court maintains subject matter jurisdiction. But the sovereign status of a tribe and its territorial jurisdiction over its members and territory necessitates disposition of the matter in that tribe's tribal courts because self-governance is implicated. See Holyfield, 34. (Abusive state practices with respect to Indian Children "seriously undercut the tribes' ability to continue as self-governing communities. Probably in no area is it more important that tribal sovereignty be respected than in an area as socially and culturally determinative as family relationships." (citations omitted) (quotations omitted). Section 1911's "jurisdiction" does not concern a district court's subject matter jurisdiction; it concerns the connection to the forum and to the group of people (tribe).

B. CARTER COUNTY DISTRICT COURT HAS CONCURRENT 

JURISDICTION PER 1911(b)

¶18 Because § 1911's jurisdiction does not concern subject matter jurisdiction, the preservation of it as error is subject to waiver on appeal,[17] however; because of its importance, we address the question of whether the Carter County District Court erred in adjudicating S.J.W. deprived. Whether "such tribe" in § 1911(a)[18] refers to the Indian Child's tribe or any tribe has not been the subject of much judicial scrutiny.

¶19 S.J.W., Parents and Amicus misunderstand the construction of § 1911(a). All would apply § 1911(a) and conclude the Chickasaw Nation has exclusive jurisdiction over S.J.W., a Creek Indian, absent consideration of the Intergovernmental Agreements providing for concurrent jurisdiction. But, neither § 1911(a) nor the § 1919 Intergovernmental Agreements are relevant in this case because: 1) S.J.W. is not domiciled within the Indian child's tribe's reservation (the Creek reservation) and is not a ward of the tribe, and 2) the Agreements only contemplate concurrent jurisdiction in the event 1911(a) applies, which it does not.[19] Put simply, section 1911(a) does not apply and the Agreements are not at issue.

¶20 Section 1911 expresses a clear preference that Indian tribes adjudicate their own member Indian children. See 1911(a)-(b). Subsection (a) contemplates that an Indian tribe will have exclusive jurisdiction over an Indian child custody proceeding if the child is domiciled or residing within the reservation. Read together, subsection (b) provides for the concurrent, but presumably tribal, jurisdiction of an Indian child that does not reside on the Indian child's tribe's reservation. By the plain language of subsections (a) and (b), they are written to be mutually exclusive with an Indian child's status as a ward of a tribe as an exception. An Indian child either is or is not domiciled within the boundaries of the Indian child's tribe's reservation. We interpret subsection (a) to mean "[a]n Indian [child's] tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." § 1911(a) (emphasis added).

¶21 Such interpretation is reasonable given the stated purpose and findings from Congress. See 25 U.S.C. §§ 1901, 1902. ICWA's purpose is to protect the tribes themselves and the interests of Indian children. Id. Tribes have an interest in political and cultural survival, 44 Fed. Reg. 67,584 (1979), and Indian children have an interest in political membership in the tribe. Holyfield, at 34 citing supporting Congressional testimony and findings; see also Santa Clara Pueblo, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). The jurisdictional scheme grants to tribes exclusive jurisdiction for those member Indian children that live within the external boundaries of the tribe's reservation, or if they are otherwise a ward of the tribe. § 1911(a). On the other hand, if a member Indian child does not live on the Indian child's tribe's reservation, subsection (b) still purports to accomplish that preference. § 1911(b). In those cases, when an Indian child lives off the reservation, jurisdiction of the case is concurrent with the state and Indian Child's tribe, and the case may be transferred to that jurisdiction. Id.

¶22 Section 1911(a) grants exclusive jurisdiction to tribes wherein member Indian children reside or are domiciled within the external boundaries of their tribe's reservation. 25 U.S.C. § 1911(a); Holyfield at 42 (citing pre-ICWA caselaw confirming a tribe's interest in adjudicating member children: Fisher v. Dist. Court, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976); Wisconsin Potowatamies of Hannahville Indian Community v. Houston, 393 F.Supp.719 (WD Mich. 1973); Wakefield v. Little Light, 276 Md. 333, 347 A.2d 228 (1975); In re Adoption of Buehl, 87 Wash.2d 649, 555 P.2d 1334 (1976); In re Lehah-puc-ka-chee, 98 F. 429 (ND Iowa 1899)).

¶23 S.J.W. is a Creek Indian living in Carter County, Oklahoma. S.J.W. is not domiciled or residing within the Creek reservation; therefore, the State of Oklahoma shares concurrent jurisdiction with the tribe. § 1911(b). All challenges to the district court's exercise of jurisdiction are denied.

2. DELAY IN ADJUDICATION HEARING

¶24 Parents next argue that the trial court erred in denying Parents' motion to dismiss for failure to complete the adjudication hearing within the statutory time period. See 10A O.S. 2011, § 1-4-601(B)(2). Parents claim their due process rights were violated and ask this Court to reverse and remand the case with instructions to dismiss. We find no due process violation.

¶25 Parents' alleged deprivation of due process of law is not subject to waiver; it may be raised for the first time on appeal. See Patterson v. Beall, 2000 OK 92, ¶ 1, 19 P.3d 839, 841. It is true that due process is implicated in proceedings involving parental rights. See In re A.M., 2000 OK 82, ¶ 6, 13 P.3d 484. The Oklahoma Constitution, article 2, section 7 provides "[n]o person shall be deprived of life, liberty, or property, without due process of law." Before a deprivation can occur, due process requires a meaningful opportunity to be heard. Flandermeyer v. Bonner, 2006 OK 87, ¶ 10, 152 P.3d 195, 198-99. Due process is flexible and calls for such procedural protections as the particular situation demands. Id. citing Wood v. Indep. Sch. Dist. No. 141 of Pott. Co., 1983 OK 30 ¶ 17, 661 P.2d 892. The action must be arbitrary, oppressive or shocking to the conscience of the court to violate Parents' due process rights. Flandemeyer, 2006 OK 87, ¶ 10, 152 P.3d, at 199 citing Meadows v. Meadows, 1980 OK 158, ¶ 7, 619 P.2d 598. The passage of time alone does not establish an unconstitutional delay or a violation of due process. Simpson v. State, 1982 OK CR 35, ¶ 6, 642 P.2d 272. In determining whether an individual has been denied procedural due process we engage in a two-step inquiry, asking whether the individual possessed a protected interest to which due process protection applies and if so, whether the individual was afforded an appropriate level of process. In re A.M., 2000 OK 82, ¶ 7, 13 P.3d 484, 487 (citing Daniels v. Williams, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); U.S. Const. amend. XIV, § 1; Okla. Const., art. 2 § 7).

¶26 The answer to the first inquiry is clear. Parents have a constitutionally protected liberty interest in the continuity of the legal bond with their children. In re A.M., 2000 OK 82, at ¶ 8, 13 P.3d at 487 (citing In re Delaney, 1980 OK 140, 617 P.2d 886; In re Christina T., 1979 OK 9, 590 P.2d 189). The fundamental nature of parental rights requires that the full panoply of procedural safeguards must be applied to child deprivation hearings. In re A.M., 2000 OK 82, ¶ 8, 13 P.3d at 487 (citing In re Chad S., 1978 OK 94, 580 P.2d 983, 985). The answer to the second inquiry, however, must be determined on a case-by-case basis because the due process clause does not by itself mandate any particular form of procedure. It calls for such procedural protection as the particular situation demands. Id. at ¶ 9.

¶27 Section 1-4-601 concerns the effects of a district court's delay; if an adjudication hearing does not occur within the specified time period, certain consequences follow. It provides:

A. The court shall hold an adjudication hearing following the filing of a petition alleging that a child is deprived. The hearing shall be held not more than ninety (90) calendar days following the filing of the petition. The child and the child's parents, guardian, or other legal custodian shall be entitled to not less than twenty (20) days' prior notice of the hearing.
B. 1. The child shall be released from emergency custody in the event the adjudication hearing is delayed beyond ninety (90) days from the date the petition is filed unless the court issues a written order with findings of fact supporting a determination that:
a. there exists reasonable suspicion that the health, safety, or welfare of the child would be in imminent danger if the child were returned to the home, and
b. there exists either an exceptional circumstance to support the continuance of the child in emergency custody or the parties and the guardian ad litem, if any, agree to such continuance.
2. If the adjudicatory hearing is delayed pursuant to this subsection, the emergency custody order shall expire unless the hearing on the merits of the petition is held within one hundred eighty (180) days after the actual removal of the child.

(emphasis added).

¶28 Parents take issue with the district court's shortcomings under 1-4-601(B)(2). S.J.W. was born March 16, 2020. Shortly thereafter he was taken into State custody. The adjudication hearing was set, but continued at the Parent's request. The hearing occurred over the course of several months and concluded with the order adjudicating S.J.W. deprived on February 12, 2021.

¶29 After S.J.W. was taken into custody, this Court entered emergency orders due to the COVID-19 pandemic, which tolled deadlines for a period of time. The Third Emergency Order, SCAD 2020-36 provided:

In all cases, the period from March 16, 2020 to May 15 2020, during which all rules and procedures, and deadlines, whether prescribed by statute, rule or order in any civil juvenile or criminal case were suspended, will be treated as a tolling period. May 16th shall be the first day counted in determining the remaining time to act. The entire time permitted by statute, rule or procedure is not renewed.

S.J.W.'s case falls squarely in the types of cases SCAD 2020-36 addresses. S.J.W. was born on March 16, 2020 and taken into custody on March 18, 2020. SCAD Order No. 2020-36 tolled the start of the § 1-4-601 deadlines in this case until May 16, 2020.

¶30 After seeking and receiving a continuance, Parents filed the motion to dismiss claiming the court failed to hold the adjudication hearing within 180 days of the removal of the child. See 1-4-601(B)(2). But, with SCAD 2020-36, 180 days had yet to expire as of that date; the motion was premature. After the motion, the adjudication hearing continued over several days in October 1, 2020, October 23, 2020, November 20, 2020, and finally on February 12, 2021. It was in the middle of that time period, on November 12, 2020, that the 180 day marker from May 16, 2020 came and went without much ado. Parents did not timely renew their objection to the continuation of the hearing over 180 days, instead they continued to participate in the adjudication hearing. It was not until the final day of testimony that Parents renewed their motion to dismiss. On that date, for good cause shown, the district court overruled the motion.

¶31 In this case Parents were afforded an appropriate level of process. The complained-of conduct was the trial court's delay in concluding the adjudication hearing. While it is true the adjudication concluded months after the statutory limitation, even with the emergency order, Parents continued to participate in the proceedings without further objection until the last possible moment. There has been no showing that such delay was arbitrary, oppressive or shocking to the conscience of the court. Accordingly, we hold there has been no due process of law violation for a delay in concluding the adjudication hearing.

CONCLUSION

¶32 State district courts are presumed to have subject matter jurisdiction. Okla. Const. art. VII, § 7(a). ICWA's jurisdictional statute ousts the State's territorial jurisdiction in limited circumstances. § 1911(a). In this case, the child custody proceeding involving a Creek Indian child domiciled in Chickasaw Nation reservation is subject to the concurrent jurisdiction of the State and Creek Nation. § 1911(b). The Carter County District Court had subject matter jurisdiction.

¶33 Under the circumstances of this case the delayed adjudication did not deprive Parents of their due process of law as Parents had a meaningful opportunity to defend, and the delay was not arbitrary, oppressive or shocking to the conscience of the court.

¶34 Motion to Dismiss is DENIED; Order of the District Court is AFFIRMED. 

Kane, C.J., Winchester, Edmondson, Gurich, Darby and Kuehn (by separate writing), JJ., concur;

Rowe, V.C.J., Kauger, and Combs, JJ., concur in result.

FOOTNOTES

[1] We take judicial notice of the fact that Carter County is entirely within the external boundaries of the Chickasaw reservation, which is therefore "Indian country." See 12 O.S.Supp.2002, §§ 2202-03 for this Court's ability to take judicial notice of adjudicative facts and the propriety of doing so; see also Bosse v. Oklahoma, 2021 OK CR 30, 499 P.3d 771 wherein the Oklahoma Court of Criminal Appeals held the Chickasaw Nation reservation was never disestablished and remains "Indian country". Important to note is that this case is a direct appeal, and not a collateral attack on a final judgment. Compare In re B.H. & J.H., 2022 OK 80, 519 P.3d 91, and the cases cited therein noting that for cases reviewed on collateral attack, review is strictly limited to the judgment roll.

[2] However, an exception exist regardless of domicile or residence of the Indian child when child is a ward of the tribal court. See 25 U.S.C. § 1911(a).

[3] First Emergency Joint Order Regarding the Covid-19 State of Disaster, SCAD 2020-24 (Okla. 2020), 2020 OK 25. A Second Emergency Joint Order Regarding the Covid-19 State of Disaster was entered on March 27, 2020. SCAD 2020-29 (Okla. 2020), 2020 OK 24.

[4] The record contains no mention of an emergency custody hearing and no emergency custody order. Parents in a later trial court pleading admit the existence of an emergency custody order even though none appears in the record. See R. at 18-19.

[5] Now Morgan Wilburn.

[6] 1. The trial court erred in adjudicating the minor child as deprived.

2. The State did not meet its burden of proof to adjudicate the minor child as deprived.

3. The trial court erred in denying Appellants' Motion to Dismiss the case for failure to adjudicate the minor child within 180 days as required by statute.

[7] McGirt held the Muscogee (Creek) Nation reservation was never disestablished. McGirt at 2468. As a result, the area remains Indian Country. Id., 2459-60, 2468.

[8] Bosse held the Chickasaw Nation reservation was never disestablished. Bosse, ¶ 8.

[9] The Holyfield Court said:

At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings. Section 1911 lays out a dual jurisdictional scheme. Section 1911(a) establishes exclusive jurisdiction in the tribal courts for proceedings concerning an Indian child 'who resides or is domiciled within the reservation of such tribe,' as well as for wards of tribal courts regardless of domicile. Section 1911(b), on the other hand, creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation; on petition of either parent or the tribe, state-court proceedings for foster care placement or termination of parental rights are to be transferred to the tribal court, except in cases of 'good cause,' objection by either parent, or declination of jurisdiction by the tribal court.

Holyfield, at 36 (footnotes omitted).

[10] As of June 29, 2022, the U.S. Supreme Court has recognized the following reservations within the external boundaries of Oklahoma: Creek, Cherokee, Choctaw, Chickasaw and Seminole reservations. Oklahoma v. Castro-Huerta, 597 U.S. ___, 142 S. Ct. 2486, 2490, 213 L. Ed. 2d 847 (2022).

[11] See Lewis v. Sac & Fox Tribe of Okla. Hous. Auth., 1994 OK 20, ¶¶ 15-16, 896 P.2d 503, 510-11:

Under our system of federalism, a state's sovereignty is concurrent with that of the federal government, subject only to limitations imposed by the Supremacy Clause. Yellow Freight System, Inc. v. Donnelly teaches that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States. To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction. In Gulf Offshore v. Mobil Oil the Court identified three different methods by which a congressional state-court ouster may be effected --- (1) by an explicit statutory directive, (2) by unmistakable implication from legislative history, or (3) by a clear incompatibility between state-court jurisdiction and federal interests.

The constitutional ouster-of-jurisdiction doctrine is not to be confused with federal preemption. Preemption occurs when federal law displaces a body of state law on the same subject. Unlike state-court ouster, which requires that we examine the law for the presence of an explicit statutory directive conferring exclusive federal-court jurisdiction, preemption is a matter of congressional intent, which may be effected even by regulations of a federal agency acting within the scope of congressionally delegated authority. Preemption alone cannot divest state courts of jurisdiction to entertain federal-law claims.

(Internal quotations and footnotes omitted).

[12] Okla. Const. art. VII, § 7(a).

[13] See 25 U.S.C. § 1922 (providing for limited state jurisdiction in the case of an Indian child residing or domiciled on a reservation, but temporarily located off the reservation, to prevent imminent physical damage or harm to the child).

[14] ICWA explicitly authorizes an Indian tribe and state to agree to concurrent jurisdiction outside the default rules set out by ICWA. 25 U.S.C. § 1919.

States and Indian tribes are authorized to enter into agreements with each other respecting care and custody of Indian children and jurisdiction over child custody proceedings, including agreements which may provide for orderly transfer of jurisdiction on a case-by-case basis and agreements which provide for concurrent jurisdiction between States and Indian tribes.

25 U.S.C. § 1919(a).

[15] 25 U.S.C. § 1903(1) provides:

"child custody proceeding" shall mean and include- -

(i) 'foster care placement' which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;
(ii) 'termination of parental rights' which shall mean any action resulting in the termination of the parent-child relationship;
(iii) 'preadoptive placement' which shall mean the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; and
(iv) 'adoptive placement' which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption.
Such term or terms shall not include a placement based upon an act which, if committed by an adult, would be deemed a crime or upon an award, in a divorce proceeding, or custody to one of the parents.

[16] Subsections 4 and 8 of §1903 provide:

"Indian child" means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. . ."
"Indian tribe" means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary because of their status as Indians, including any Alaska Native village as defined in section 1602(c) of Title 43. . .

[17] "[M]atters not first presented to the trial court for resolution are generally not considered on appeal." Osage Nation v. Bd. of Commissioners of Osage Cnty., 2017 OK 34, ¶ 17, 394 P.3d 1224, 1232 (footnote omitted).

[18]

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

§1911(a) (emphasis added).

[19] The Intergovernmental Agreement Between the State of Oklahoma And Each Of The Five Tribes Regarding Jurisdiction Over Indian Children Within Each Tribe's Reservation is available at the Oklahoma Secretary of State's Website. There are several provisions which reiterate the goal of the parties, which is to share concurrent jurisdiction if the jurisdiction would otherwise have been exclusive per 25 U.S.C. § 1911(a), to wit:

This Agreement is the result of a partnership formed by each of the Five Tribes and the State of Oklahoma. The intent of this Agreement is to further streamline the jurisdictional provisions put forth in the Indian Child Welfare Act and create concurrent jurisdiction on the respective reservations of the Five Tribes with the State of Oklahoma and its political subdivisions.

***

IV. CONCURRENT JURISDICTION
The parties have agreed to enter into this jurisdiction sharing Agreement based on the premise that the Five Tribes have exclusive jurisdiction over any child custody proceeding involving an Indian child domiciled within the boundaries of each tribe's respective reservation as provided for in 25 U.S.C. § 1911(a).
Within the respective reservation boundaries of the Five Tribes, as those boundaries are described in the most recent treaty or agreement between each Tribe and the United States, the State of Oklahoma and each Tribe shall share concurrent jurisdiction over any Indian child domiciled within its reservation, except as follows:

(1) Each Tribe shall retain exclusive jurisdiction over any child custody proceeding involving an Indian child domiciled or located on lands:

(A) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same; or
(B) land held in trust by the United States on behalf of an individual Indian or Tribe;

or
(C) land owned in fee by a Tribe, if the Tribe--

(i) acquired fee title to such land, or an area that included such land, in accordance with a treaty with the United States to which such Tribe was a party; and (ii) never allotted the land to a citizen or member of such Tribe.

(2) Where an Indian child is a ward of a Tribe's court, the Tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

Intergovernmental Agreement Between the State of Oklahoma And Each Of The Five Tribes Regarding Jurisdiction Over Indian Children Within Each Tribe's Reservation, Aug. 7, 2020, Okla. Sec'y of State Doc. No. 50531, https://www.sos.ok.gov/documents/filelog/93637.pdf.

 

 

KUEHN, J., with whom KAUGER and COMBS, JJ., join, SPECIALLY CONCURRING:

¶1 I concur in the Majority's conclusion that the State has concurrent jurisdiction under the federal and Oklahoma Indian Child Welfare Acts, as this is consistent with our recent conclusion in Milne v. Hudson, 2022 OK 84, 519 P.3d 511.

 

 

 

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2023 OK 112, 
SCOTT v. FOSTER
Cited

 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
2021 OK CR 30, 499 P.3d 771, 
BOSSE v. STATE
Discussed at Length

 
1982 OK CR 35, 642 P.2d 272, 
SIMPSON v. STATE
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1994 OK 20, 896 P.2d 503, 65 OBJ 535, 
Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority
Discussed at Length

 
2000 OK 92, 19 P.3d 839, 71 OBJ 3016, 
PATTERSON v. BEALL
Discussed

 
2004 OK 33, 91 P.3d 646, 
IN RE: A.N.O., A MINOR CHILD
Discussed at Length

 
2005 OK 52, 131 P.3d 705, 
STATE ex rel. OKLAHOMA TAX COMMISSION v. TEXACO EXPLORATION & PRODUCTION, INC.
Discussed

 
2006 OK 29, 139 P.3d 873, 
BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed

 
2006 OK 43, 157 P.3d 100, 
REEDS v. WALKER
Discussed

 
2006 OK 87, 152 P.3d 195, 
FLANDERMEYER v. BONNER
Discussed at Length

 
2010 OK 16, 231 P.3d 645, 
DEPT. OF SECURITIES ex rel. FAUGHT v. BLAIR
Discussed

 
1975 OK 73, 536 P.2d 358, 
POINTER v. HILL
Discussed

 
2015 OK 51, 353 P.3d 532, 
DUTTON v. CITY OF MIDWEST CITY
Discussed

 
1978 OK 94, 580 P.2d 983, 
MATTER OF CHAD S.
Discussed

 
1979 OK 9, 590 P.2d 189, 
MATTER OF CHRISTINA T.
Discussed

 
2017 OK 34, 394 P.3d 1224, 
OSAGE NATION v. BD. OF COMMISSIONERS OF OSAGE COUNTY and OSAGE NATION v. OSAGE COUNTY BD. OF ADJUSTMENT
Discussed

 
1980 OK 140, 617 P.2d 886, 
Delaney, Matter of
Discussed

 
1980 OK 158, 619 P.2d 598, 
Meadows v. Meadows
Discussed

 
2020 OK 24, 462 P.3d 262, 
SECOND EMERGENCY JOINT ORDER REGARDING THE COVID-19 STATE OF DISASTER
Cited

 
2020 OK 25, 462 P.3d 704, 
FIRST EMERGENCY JOINT ORDER REGARDING THE COVID-19 STATE OF DISASTER
Cited

 
2022 OK 80, 519 P.3d 91, 
HAMMER v. STATE
Discussed at Length

 
2022 OK 84, 519 P.3d 511, 
MILNE v. HUDSON
Discussed

 
2000 OK 82, 13 P.3d 484, 71 OBJ 2668, 
IN THE MATTER OF A.M. & R.W.
Discussed at Length

 
1983 OK 30, 661 P.2d 892, 
Wood v. Independent School Dist. No. 141 of Pottawatomie County
Discussed

Title 10. Children

 
Cite
Name
Level

 
10 O.S. 40, 
Short Title
Cited

Title 43. Marriage

 
Cite
Name
Level

 
43 O.S. 551-101, 
Short Title
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA